THE PEOPLE OF THE STATE OF ILLINOIS *ex rel.* FRED FINCK *et al.*, Plaintiffs-Appellees and Cross-Appellants, v. BRUCE D. LOCHER, Special State's Attorney for Madison County, Defendant-Appellant and Cross-Appellee (Merle Bassett *et al.*, Plaintiffs-Appellants and Cross-Appellants; Beverly Delaney, Plaintiff).

Fifth District   No. 5—86—0286

Opinion filed July 28, 1988.

Richard A. Hollis, of Springfield, for appellant Bruce D. Locher.

No briefs filed for appellees.

JUSTICE WILLIAM A. LEWIS delivered the opinion of the court:

Defendant, Bruce D. Locher, Special State's Attorney for Madison County, appeals from an order holding him in contempt of court and from a subsequent order reaffirming the contempt holding and sentencing him to two consecutive weekends in jail.

This case has a long history and a unique background most of which is not relevant to the issues raised in this appeal. Judge Dennis A. Cashman from the Eighth Judicial Circuit was assigned by the supreme court at the request of the chief judge of the Third Judicial Circuit to hold court in Madison County "on such dates as it may be necessary to complete all matters pending in Case No. 84—MR—92, Petition for Appointment of Special State's Attorney." Judge Cashman, pursuant to his assignment order, appointed the defendant, Bruce D. Locher of Springfield, Illinois, as Special State's Attorney and authorized him to complete the investigation pending before the January 1984 grand jury concerning allegations of misconduct in the

supervisor of assessment's office in Madison County.

On August 8, 1985, several persons, who were being investigated, commenced this case by filing a complaint in *quo warranto* challenging the defendant's authority to act as Special State's Attorney by reason of the defendant's never having taken an oath of office. Associate Judge Wendell Durr was assigned by the chief judge of the Third Judicial Circuit to hear the matter.

After several hearings in this case, the defendant filed a "Petition To Direct County Of Madison, Illinois To Pay Attorney Fees and Costs of Defendant" setting forth that he had been appointed Special State's Attorney by Judge Cashman and Special Prosecutor by Judge Edward C. Ferguson in case No. 82—CF—785 in Madison County and prayed "that this Court will enter an Order and Judgment on and against the County of Madison, State of Illinois, to pay Defendant, BRUCE LOCHER, for his time devoted to the Quo Warranto suit, and reimburse him for his expense and reasonable attorney's fees, in the same manner and under the same procedure as he is paid as special prosecutor or Special State's Attorney of Madison County, Illinois." Judge Durr concluded a hearing on January 10, 1986, in which the aforesaid petition was raised by saying:

> "And perhaps we'll take under advisement the question of attorney fees. But my feeling at this point would be to defer to either the Supreme Court or Judge Cashman on that point."[1]

On January 15, 1986, Judge Durr entered an order covering other rulings made in the January 10 hearing without mentioning any fees, attorney fees, or expenses of the defendant.

On February 5, 1986, the State's Attorney of Madison County filed a "Motion For Injunctive Relief" requesting Judge Durr to restrain the defendant from billing for fees incurred in this case and other cases before other judges. Judge Durr responded by issuing an *ex parte* order on February 7, 1986, setting forth that he had reviewed the "Motion For Injunctive Relief" and was setting the legal fees of defendant's counsel, mileage expenses, and the defendant's fee as a litigant at $20 per hour. The Judge further ordered:

> "3. To preclude any further dissipation of citizens [*sic*] monies, by a shotgun approach of numerous attempts to raise the same issues in different forums, the defendant is hereby di-

---

[1]The reference to the supreme court concerned a supervisory order issued by the supreme court reinstating the defendant as Special State's Attorney after his removal by the chief judge of the Third Judicial Circuit upon the request of the newly elected State's Attorney of Madison County.

rected within seven days to cause the termination of any matters now pending in any other forum raising any issues that are now pending in this cause so as to avoid the necessity of any further time or money investment by the citizens of this County or their servants, be those servants the Judges or State's Attorneys or Special Prosecutors or Court Reporters or Clerks."

This order was followed by the filing of a "Second Motion For Injunctive Relief" by the State's Attorney setting forth that the defendant had submitted a bill that "did not comport with the Order of February 7, 1983 [*sic*] in that it requested a greater amount of fees than those which are authorized" and requested an injunction enjoining the defendant among other things from violating the court order of February 7, 1986.

On April 4, 1986, Judge Durr entered an order deciding several matters that he had taken under advisement. This order included, however, a review of the history of the defendant's attempts to be compensated with reference to the alleged attempts from which the State's Attorney sought injunctive relief and the filing in case No. 84—MR—92 on "March 13, 1986 [*sic*]," of a petition for fees seeking relief from Judge Cashman from Judge Durr's order of February 7. Judge Durr found this attempt to evade his order to be "Judge-Shop" and contemptuous. The defendant was held in "wilful and direct contempt" of court with the sentencing reserved.

The defendant filed a "Petition To Reconsider Any Issue of Contempt" on April 14, which was heard on July 9, 1986. There was no testimony or evidence given at this hearing, which basically consisted of argument by counsel and the judge over the judge's finding that the defendant had been "judge shopping." This hearing concluded with the judge sentencing the defendant to two weekends in jail. The judgment was reduced to writing in an order filed on July 16, 1986, with the judge setting forth the following:

"Although the defendant's conduct did not occur in the ocular presence of the Judge, the acts were committed in an integral part of the Court, being the filing of pleadings seeking an award of fees and costs after such award had been made herein, the failure to dismiss other conflicting petitions when ordered to do so, and the presentation thereof to another Trial Judge, all of which occurred in the Court itself and is a matter of record in the Court itself and is a matter of record in the Court's own records in this cause and in 84—MR—92."

The Judge further stated that "(T)he contemptuous action is a

matter of Court record, which is established independently of any evidentiary hearing."

The defendant raises four issues on appeal:

(1) that his conduct did not constitute contempt of court;

(2) that the trial judge lacked jurisdiction;

(3) that the trial court failed to provide due process to the defendant; and

(4) that the sentence was excessive without the defendant being given the opportunity to present evidence in mitigation.

We feel that it would be premature to decide all of the issues as this case must be returned to the trial court for failing to provide those procedural requirements necessary to ensure the defendant of due process of law.

■ The courts have been confronted with the problem of contempt and due process of law for the past 60 years, with some progress being made so as to clarify the procedure. We now have a generally agreed upon definition of criminal contempt as being

"conduct which is calculated to embarrass, hinder or obstruct a court in its administration of justice or derogate from its authority or dignity, thereby bringing the administration of law into disrepute." *People v. Javaras* (1972), 51 Ill. 2d 296, 299, 281 N.E.2d 670, 672.

Further the supreme court recognized "two forms of criminal contempt: direct and indirect." *People v. L.A.S.* (1986), 111 Ill. 2d 539, 543, 490 N.E.2d 1271, 1273.

"Direct criminal contempt is contemptuous conduct occurring 'in the very presence of the judge, making all of the elements of the offense matters within his own personal knowledge.' (*People v. Harrison* (1949), 403 Ill. 320, 323-24.) Direct contempt is 'strictly restricted to acts and facts seen and known by the court, and no matter resting upon opinions, conclusions, presumptions or inferences should be considered.' *People v. Loughran* (1954), 2 Ill. 2d 258, 263[, 118 N.E.2d 310]." *L.A.S.*, 111 Ill. 2d at 543, 490 N.E.2d at 1273.

In the past direct criminal contempt was separated into two types:

"[T]hose which are personally observed by the judge and those which are not personally seen by the judge but take place in an integral or constituent part of the court and are thereby deemed to have occurred in the constructive 'presence of the court.'" *People v. Javaras* (1972), 51 Ill. 2d 296, 299, 281 N.E.2d 670, 672.

■ The filing of or nonfiling of contemptuous documents is the type of direct contempt that falls within this second category, and this type of direct contempt requires notice and a hearing. *People ex rel. Kunce v. Hogan* (1976), 37 Ill. App. 3d 673, 346 N.E.2d 456, *aff'd in part, rev'd in part* (1977), 67 Ill. 2d 55, 364 N.E.2d 50; *People v. Waldron* (1986), 114 Ill. 2d 295, 500 N.E.2d 17.

Since the contemptuous acts allegedly consisted of the filing of a petition for fees for this case in another case before another judge and the failure to withdraw and terminate the filing of bills with county officials contrary to the trial judge's order, this case clearly falls within the second category of contempt. Thus notice and a hearing should have been given.

■ Further, the fact that the trial judge found the defendant in "wilful contempt" necessitates that the defendant be given a hearing, because wilful contempt "must be established by facts beyond the court's knowledge." (*L.A.S.*, 111 Ill. 2d at 545, 490 N.E.2d at 1274.) "Whether a contempt is considered direct or indirect, if the court is required to determine whether the conduct alleged was wilful, and in order to do so must consider extrinsic evidence as to matters not within its knowledge, the respondent must be given an opportunity to defend. (*People ex rel. Melendez v. Melendez* (1971), 47 Ill. 2d 383, 386[, 266 N.E.2d 327, 329].)" *Waldron*, 114 Ill. 2d at 302, 500 N.E.2d at 20.

This case differs from all the cases we have found in that the contemnor was in court either at the time he committed the contemptuous act or subsequently at a hearing on a rule to show cause. Here the trial judge *sua sponte* took, in effect, judicial notice of all the facts and drew the inference, opinion, and conclusion that the defendant was wilfully disobeying his *ex parte* order of February 7, 1986. Even if we were to assume *arguendo* that the evidentiary rule of judicial notice has been expanded to allow the judge to take judicial notice of other court proceedings before other judges (see *People v. Davis* (1976), 65 Ill. 2d 157, 357 N.E.2d 792; *Vulcan Materials Co. v. Bee Construction* (1983), 96 Ill. 2d 159, 449 N.E.2d 812), still we believe that a hearing should have been held.

In *Davis* (65 Ill. 2d at 159, 357 N.E.2d at 793), the trial judge had placed the defendant on probation, ordered the defendant not to violate any laws, and subsequently accepted a plea of guilty and found the same defendant guilty of violating the criminal laws. It would appear that a petition to revoke probation and a hearing would be unnecessary under these circumstances, since the trial judge personally had observed all of the facts. The right to due process of law, how-

ever, necessitates a hearing even under these circumstances. Since direct criminal contempt is a crime, the contemnor must be afforded the same rights as any other criminal defendant with the one exception being those cases involving contemptuous conduct observed by the judge within his physical presence, while said judge is in the performance of his judicial duties. *People v. Totten* (1987), 118 Ill. 2d 124, 514 N.E.2d 959; *People v. Jashunsky* (1972), 51 Ill. 2d 220, 282 N.E.2d 1.

This cause is reversed and remanded with directions that if the trial court wishes to proceed, the procedures used in *Hogan* should be followed.

Reversed and remanded with directions.

KARNS and LEWIS, H., JJ., concur.