ROSEMARY A. ROTH, Special Adm'r of the Estate of Melvin J. Roth, Deceased, Petitioner-Appellee, v. ST. ELIZABETH'S HOSPITAL, Respondent (James V. Vest, Respondent-Appellant (Charlene A. Cremeens *et al.*, Contemnors-Appellants)).

Fifth District   No. 5—92—0227

Opinion filed February 10, 1993.

LEWIS, J., specially concurring.
GOLDENHERSH, J., concurring in part and dissenting in part.

Hinshaw & Culbertson, of Chicago (D. Kendall Griffith and Stephen R. Swofford, of counsel), for appellants James V. Vest and Charlene A. Cremeens.

Michael B. Marker, of Carr, Korein, Tillery, Kunin, Montroy, Glass & Bogard, of East St. Louis, for appellant Gerald L. Montroy.

Bruce N. Cook, of Cook, Shevlin, Keefe, Ysursa, Brauer & Bartholomew, Ltd., of Belleville, for appellee.

Saul J. Morse, of Illinois State Medical Society, of Springfield, and Richard F. Record, Jr., of Craig & Craig, of Mattoon, for *amicus curiae* Illinois State Medical Society.

Marie A. Bufalino, of Illinois Hospital Association, of Naperville, for *amicus curiae* Illinois Hospital Association.

John S. Sandberg and Kimberly V. Schneider, both of Sandberg, Phoenix & Von Gontard, P.C., of St. Louis, Missouri, for *amicus curiae* Memorial Hospital.

Michael J. Nester, of Donovan, Rose, Nester & Szewczyk, P.C., of Belleville, for *amicus curiae* St. Elizabeth's Hospital.

PRESIDING JUSTICE CHAPMAN delivered the opinion of the court:

"April is the cruellest month."[1]

On April 2, 1992, several hours after the playful pranks of the preceding day were to have ended, Associate Judge Radcliffe of St. Clair County jailed a doctor and his two lawyers.

> "THE COURT: I'm finding them in direct willful civil contempt of this Court for violation of my last ruling and order on Miss Cremeens' objection.
>
> Do you have anything to say, Dr. Vest?
>
> DR. VEST: No, sir.
>
> THE COURT: Do you have anything to say, Mr. Montroy?
>
> MR. MONTROY: No, your Honor.

---

[1] T.S. Eliot, The Waste Land, as cited by The New Oxford Book of American Verse, 595 (R. Ellmann 1976).

THE COURT: Do you have anything to say, Miss Cremeens?

MS. CREMEENS: The only thing that I would ask for, your honor, is a monetary fine so that I can appeal this matter. Dr. Vest is a critical care physician whom the patients of St. Clair County depend upon for care and treatment, and he has patients to see this afternoon in the office, as well as hospital rounds.

THE COURT: The Court will sentence him to the St. Clair County Jail until there's compliance or indication of compliance with the Court's order. Take him into custody.

MR. SWOFFORD: I reiterate my request for 24 hour stay and go to the Appellate Court.

THE COURT: Denied.

MR. SWOFFORD: Would the Court set bond in lieu of incarceration?

THE COURT: Take him into custody. You can raise whatever you want.

(Court adjourned.)"

The reference to April Fool's Day in the first sentence of this opinion was not meant to suggest that Judge Radcliffe's order of incarceration was meant as some sort of joke; it was not. The portion of the hearing quoted is not meant to suggest that the doctor's refusal to answer a question occurred during a trial; it did not. The order of incarceration was entered in all seriousness in an attempt to coerce the doctor and his lawyers to accede to the petitioner's demands for information in an action brought under Supreme Court Rule 224 (134 Ill. 2d R. 224).

Reversal of a trial judge's order of incarceration should be supported by reasons. There are several reasons why the trial court's abrupt order to "Take him into custody" was wrong.

First is its very abruptness. Even though counsel for Dr. Vest had informed the court that the doctor had patients to see that afternoon, both in his office and in the hospital, absolutely no concern was expressed, nor was any accommodation made, by the court for the care of those patients. The information sought by the petitioner in these proceedings was not needed on an emergency basis. The statute of limitations would not expire until May 14, 1993. The original petition was filed November 6, 1991. On December 4, 1991, Judge Le Chien ordered the production of medical records and gave 30 days for their production and allowed an additional 30 days for petitioner to review them. In addition, Dr. Vest's deposition began on February 17, 1992, and was terminated on that day. The deposition was rescheduled in

March and again terminated. Finally, the very proceeding in which the court ordered the jailing of Dr. Vest had been continued from the morning of April 2 to the afternoon of that day to enable the doctor to confer with his personal counsel, Mr. Montroy. The applicable statute of limitations date and various time periods have been listed to make it clear that no emergency existed that required immediate incarceration; and yet it was ordered.

Whether the person jailed is a doctor with hospitalized patients who need his care, a lawyer with clients who need her counseling, or a steelworker who is scheduled to work the 4 to 12 shift, some consideration should be given to people who are about to be jailed and those whom their jailing may affect. If jailing is necessary, so be it. If immediate jailing is necessary, so be it. Neither was necessary in this case. Dr. Vest and his lawyers could have been ordered to report to jail the next day, or the next week, and both the court's dignity and its ability to use jailing as a tool of persuasion would have remained intact. Whatever the purpose of the immediate incarceration may have been, its effect must have been to perpetuate the aura of intimidation that had been created by petitioner's counsel's comments to the doctor during the deposition:

"All right, sir, I will see if I can jail you.

\* \* \*

Why don't you instruct him not to answer? I am looking forward, all the trouble you have caused me, to jailing him. Dr. Vest, you shouldn't take that seriously.

\* \* \*

You [Dr. Vest] are going to end up in the slammer."

We note that, while the second of these comments may have been made tongue-in-cheek, the other two were not. We note further that it is not counsel who has the power to jail a witness, but the court. We note finally that the court should use the power sparingly.

■ The power to punish for contempt rests within the sound discretion of the trial court, and its decision will not be overturned absent a clear abuse of discretion. (*In re Estate of Wernick* (1988), 176 Ill. App. 3d 153, 156, 530 N.E.2d 1127, 1129.) While the trial court may impose necessary sanctions to accomplish discovery, it may not impose sanctions which are intended primarily as punishment. *Gallo v. Henke* (1982), 107 Ill. App. 3d 21, 27, 436 N.E.2d 1068, 1072.

Turning from the question of the abruptness of the trial court's order to the question of its appropriateness, we conclude that the court was wrong in entering any order of contempt, let alone an order of incarceration. None of the jailed parties exhibited any disre-

spect for the court during any stage of this proceeding. While we realize that the court's order was for civil contempt to secure compliance with its order and was not concerned with any expression of disrespect, we are not so far removed from our days as trial judges that we have forgotten that a disrespectful attitude may play some part in the remedy fashioned. For that reason, we point out that no such disrespect, either in attitude or in action, occurred during this proceeding.

Contempt of court has been generally defined as conduct calculated to embarrass, hinder or obstruct a court in its administration of justice, or to derogate from its authority or dignity, or to bring the administration of law into disrepute. (*People v. Miller* (1972), 51 Ill. 2d 76, 78, 281 N.E.2d 292, 293; *In re Estate of Melody* (1969), 42 Ill. 2d 451, 452, 248 N.E.2d 104, 105.) The courts have long recognized the potential for abuse in exercising the summary power to imprison for contempt. (*Bloom v. Illinois* (1968), 391 U.S. 194, 202, 20 L. Ed. 2d 522, 529, 88 S. Ct. 1477, 1482.) Punishment for contempt is a drastic remedy to the end that individual liberty must be protected from possible abuse of the inherent power of the courts to so proceed. (*People v. Wilcox* (1955), 5 Ill. 2d 222, 228, 125 N.E.2d 453, 456.)

> "That contempt power over counsel, summary or otherwise, is capable of abuse is certain. Men who make their way to the bench sometimes exhibit vanity, irascibility, narrowness, arrogance, and other weaknesses to which human flesh is heir. Most judges, however, recognize and respect courageous, forthright lawyerly conduct. They rarely mistake overzeal or heated words of a man fired with a desire to win, for the contemptuous conduct which defies rulings and deserves punishment. They recognize that our profession necessarily is a contentious one and they respect the lawyer who makes a strenuous effort for his client." *Sacher v. United States* (1952), 343 U.S. 1, 12, 96 L. Ed. 717, 725, 72 S. Ct. 451, 456-57.

It is true that on several occasions counsel for Dr. Vest requested the court to hold her in contempt and to assess a fine so that she could seek review of the appropriateness of the court's order. The request, however, was always made in a respectful manner, and such a procedure is a recognized means of testing the validity of a trial court's ruling. In *Computer Teaching Corp. v. Courseware Applications, Inc.* (1990), 199 Ill. App. 3d 154, 556 N.E.2d 816, the appellate court found no error in the trial court's citing the defendant in civil contempt and assessing a $100 fine, in response to the defendant's request to be held in civil contempt to permit appellate review of the

issue presented. Similarly, in *C N R Investments, Inc. v. Jefferson Trust & Savings Bank* (1983), 115 Ill. App. 3d 1071, 451 N.E.2d 580, *Sakosko v. Memorial Hospital* (1988), 167 Ill. App. 3d 842, 522 N.E.2d 273, and *First United Bank v. Hofmann* (1992), 227 Ill. App. 3d 1036, 591 N.E.2d 915, parties were held in contempt of court and ordered to pay a modest fine for failure to comply with discovery orders. The appellate court found that the contemnors in each case had not acted in bad faith or with disdain for the court. The court held that a citation for civil contempt imposing a modest fine is an appropriate way to test the propriety of a discovery order. Indeed, that very procedure was utilized by Judge Radcliffe in another case, Malmberg v. Illinois Department of Transportation (Cir. Ct. St. Clair Co.), No. 92—MR—86, argued before this court the same day as *Roth*. Judge Radcliffe chose, however, to use incarceration as the sanction to obtain compliance with his order in this case.

To this point we have discussed the order's immediate implementation and the lack of obstreperous conduct to support it. We now turn to an examination of its legal basis, for if the trial judge was wrong on the law, his contempt sanctions should be vacated on that basis.

The trial court was wrong in his legal analysis in this case in five ways:

(1) the language of Supreme Court Rule 224 does not allow discovery as extensive as petitioner sought and as the court ordered;

(2) the committee comments to Supreme Court Rule 224 are contrary to the court's construction of the rule;

(3) the cases construing Supreme Court Rule 224 do not support the court's interpretation of it;

(4) contrary to the trial judge's thought, the supreme court's denial of respondent's earlier petition for a supervisory order did not act as an approval of his management of the proceedings; and

(5) the factual circumstances of this case made it clear that the use of Supreme Court Rule 224 was both unnecessary and unwarranted.

In 1989, the supreme court promulgated Rule 224:

"(a) Procedure.

(1) *Petition.*

(i) A person or entity who wishes to engage in discovery for *the sole purpose of ascertaining the identity of one*

*who may be responsible in damages* may file an independent action for such discovery.

(ii) The action for discovery shall be initiated by the filing of a verified petition in the circuit court of the county in which the action or proceeding might be brought or in which one or more of the persons or entities from whom discovery is sought resides. The petition shall be brought in the name of the petitioner and shall name as respondents the persons or entities from whom discovery is sought and shall set forth: (A) the reason the proposed discovery is necessary and (B) the nature of the discovery sought and shall ask for an order authorizing the petitioner to obtain such discovery. *The order* allowing the petition *will limit discovery to the identification of responsible persons* and entities and where a deposition is sought will specify the name and address of each person to be examined, if known, or, if unknown, information sufficient to identify each person and the time and place of the deposition." (Emphasis added.) (134 Ill. 2d R. 224.)

The language of the rule clearly limits discovery under it to the *identity* of those who may be responsible in damages. Once the identity of such persons or entities has been ascertained, the purpose of the rule has been accomplished and the action should be dismissed. The petitioner asserted, and the trial judge adopted, the position that additional information could be obtained through the use of Rule 224. Petitioner stressed the inclusion of the phrase, "who may be responsible in damages," and argued that, in order to make the determination of who was responsible, the petitioner should be allowed to engage in broad discovery.

An examination of the rule's language reveals that it is not intended to serve any such purpose. The rule does not say it is to be used for "ascertaining who may be responsible"; it provides that it is for "the *sole* purpose of ascertaining the *identity* of one who may be responsible." (Emphasis added.) If the petitioner's contention were correct:

(1) there would be no need for any of the general discovery provisions contained in Supreme Court Rules 201 through 224 (at least from a plaintiff's standpoint) since the plaintiff could make a complete determination of "who may be responsible" by using Rule 224 alone; and

(2) there would be no need for the words "the identity of" in the rule since the phrase "ascertaining who may be responsible" would more properly state the purpose.

This second point may deserve some amplification. From a grammatical standpoint the prepositional phrase "of one who may be responsible" is not the object of "ascertaining"; it is a modifier of "the identity." Without the phrase "of one who may be responsible," the reader might not know whose identity was being sought, but that does not change the "sole purpose" of the rule from a search for identity to a search for responsibility.

The rule restates its function in subparagraph (a)(1)(ii)(B):

. "The order *** will limit discovery to the *identification* of responsible persons ***." (Emphasis added.) (134 Ill. 2d R. 224(a)(1)(ii)(B).)

Again, the focus is on a determination of identity and not on the determination of the responsibility of those identified.

If the two clear references to identity in the rule itself were not enough, the four such references in the committee comments should have been:

"New Rule 224 was adopted effective August 1, 1989. This rule provides a tool by which a person or entity may, with leave of court, compel limited discovery before filing a lawsuit in an effort to determine the *identity* of one who may be liable in damages. *The rule is not intended to modify in any way any other rights secured* or responsibilities imposed *by law*. It provides a mechanism for plaintiffs to ascertain *the identity of potential defendants* in a variety of civil cases, including Structural Work Act, products liability, malpractice and negligence claims. The rule will be of particular benefit in industrial accident cases where the parties responsible may be known to the plaintiff's employer, which may immunize itself from suit. The rule facilitates the *identification of potential defendants* through discovery depositions or through any of the other discovery tools set forth in Rules 201 through 214. The order allowing the petition will limit discovery to the *identification of responsible persons and entities*. Therefore, Supreme Court Rule 215, dealing with mental and physical exams, and Supreme Court Rule 216, dealing with requests to admit, are not included as means of discovery under this rule." (Emphasis added.) (134 Ill. 2d R. 224, Committee Comments, at 188-89.)

The comments make it abundantly clear that: (1) "one who may be responsible" means a "potential defendant"; (2) the order should "*limit*

discovery to the identification"; and (3) the "rule is not intended to modify in any way any other rights secured *** by law," *i.e.*, the rule is not intended to abrogate or to replace the general discovery provisions contained in Supreme Court Rule 201 *et seq.*

If the language of the rule and its committee comments were not clear enough to protect the contemnors, the only reported cases dealing with Rule 224 at the time of the incarceration should have been.

In *Guertin v. Guertin* (1990), 204 Ill. App. 3d 527, 561 N.E.2d 1339, Wilfred Guertin, the decedent, had executed a will dividing his property equally among his brothers and sisters. He had also made Arthur Guertin, one of his brothers, and Hazel Guertin, Arthur's wife, joint tenants with him on three certificates of deposits (CDs) which constituted the bulk of his estate. When Wilfred died, Peter Guertin and other siblings felt that Arthur and Hazel might have exerted undue influence over Wilfred, and they filed an equitable bill in discovery "in order to depose Hazel and First Midwest Bank to aid in possible claims." (*Guertin*, 204 Ill. App. 3d at 528, 561 N.E.2d at 1340.) Hazel Guertin did not appear for her scheduled deposition, she was held in civil contempt and fined, and she appealed. In examining the possible sources for the trial court's authority to hold Hazel in contempt, the appellate court examined both the respondents-in-discovery provision, section 2—402 of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—402), and Supreme Court Rule 224 (134 Ill. 2d R. 224) and found both of them inapplicable. As to the latter, the court succinctly stated: "Supreme Court Rule 224 is inapplicable to the instant case as the *identity* of the defendant is already known." (Emphasis added.) *Guertin*, 204 Ill. App. 3d at 531, 561 N.E.2d at 1342.

In *Shutes v. Fowler* (1991), 223 Ill. App. 3d 342, 584 N.E.2d 920, the plaintiff was injured on a construction project in Florida and brought an action against his employer's owner under Rule 224 to learn the identity of the other companies involved in the construction project. Counsel for respondent refused to comply with the court's order of discovery, and he was held in contempt. He appealed and challenged the constitutionality of Rule 224. The appellate court concluded the rule was constitutional and made two other comments of interest to this case:

> "Discovery under Rule 224 is limited to ascertaining *the identities of potential defendants.* \*\*\*
> * * *
> *The clear and specific requirements* of Rule 224 lead us to conclude the rule is not unconstitutionally vague or overbroad.

Instead, *the rule supplements section 2—402* of the Code and works to streamline the court process." (Emphasis added.) *Shutes*, 223 Ill. App. 3d at 345-46, 584 N.E.2d at 923.

Thus, by the time of the trial court's incarceration order, two different districts of the appellate court, the third in *Guertin* and the fourth in *Shutes*, had recognized that Rule 224 was to be used to ascertain only the *identities* of potential defendants. Moreover, in *Shutes*, the court observed the "clear and specific requirements" of the rule and that it was intended to supplement section 2—402 of the Code. What is the significance of the last observation? Simply that, since section 2—402 allows full discovery of those named as respondents in discovery once a lawsuit against at least one defendant is filed, the *only* use and purpose of Rule 224 is to ascertain the identity of a potential defendant. Once that identity is learned, a case can be filed and either the general discovery provisions of Rule 201 *et seq.* or the provisions of section 2—402 can be utilized to determine who is responsible. See *Guertin v. Guertin* (1990), 204 Ill. App. 3d 527, 561 N.E.2d 1339; *Gonzales v. Pro Ambulance Service* (1991), 219 Ill. App. 3d 284, 579 N.E.2d 1184; *Armour v. Petersen* (1991), 219 Ill. App. 3d 289, 579 N.E.2d 1188; *Jacobs v. Abbott Laboratories* (1991), 213 Ill. App. 3d 998, 572 N.E.2d 1231.

■ Turning to the fourth error committed by the trial judge, that is, his conclusion that the supreme court's denial of the respondents' petition for a supervisory order constituted approval of his method of procedure, we note the following colloquies:

"THE COURT: Mr. Swofford, I'm glancing through your objections to the contempt proceeding, and these issues have already been raised at this point.

MR. SWOFFORD: I understand.

\* \* \*

THE COURT: I've already ruled on them, and the supreme court has denied your firm to get in, from the supervisory order or mandamus. Where are we at now?

MR. SWOFFORD: Your honor \*\*\*.

\* \* \*

THE COURT: We've gone through this before, Miss Cremeens. It's not only the identity. You guys keep telling me that 224 is limited to the identity. You quoted it in your brief to the supreme court. I said that if the purpose of 224 was limited to names and addresses and phone numbers, there would be no purpose for 224, and you guys quoted it to the supreme court.

\* \* \*

MS. CREMEENS: I can't in good faith let Dr. Vest answer questions \* \* \*.

THE COURT: I appreciate your disagreement with the court. Apparently the supreme court didn't think it was sufficient for their attention, *so they must have been satisfied.*

MS. CREMEENS: I don't interpret it that way. They declined to hear it.

THE COURT: Yeah, they declined to hear it.

\* \* \*

MR. MONTROY: If I could make a statement on the record, I think for clarification, this might assist.

Your Honor, I've had a discussion with Dr. Vest, and it is the position of Dr. Vest that pursuant to Supreme Court Rule 224 that [*sic*] he is required so far as his patient care of Roth to provide the names, addresses, if he knows them, of any person who was involved with the patient care as such. And that the Supreme Court Rule 224 requires nothing further, and—.

THE COURT: If that's the position of your client, Mr. Montroy, that matter has already been litigated, the Court has ruled on it. *It's been up to the supreme court. They've denied leave to seek a mandamus or a supervisory order and we've been over that ground before. If that's your client's interpretation of 224, he's incorrect.*

\* \* \*

THE COURT: Now I've made myself as clear as I possibly can over the last two months about what 224 means. *I have heard nothing from the Supreme Court or any other court which would indicate that I was incorrect in my interpretation,* so I'm going to give you guys some guidance so we can get through this. I really don't want to be in a position where Dr. Vest is a pawn in a game to try to litigate this issue. *As far as I'm concerned this issue has been litigated.*

\* \* \*

THE COURT: *We've already gone to the Supreme Court* on basically the same issues, Counsel." (Emphasis added.)

The quotations establish that on at least four occasions the trial judge stated that the supreme court had already decided the Rule 224 issue and that its decision supported his broad interpretation of the rule's requirements. Petitioner concedes that the trial court was wrong in its interpretation of the effect of the supreme court's decision.

Finally, the factual circumstances of this case belie the necessity to use Rule 224. Plaintiff's lawyers in Illinois are familiar with situations such as those involving a widow who comes into the office because her husband was crushed in a machine at the plant where he worked. The answers to questions about the type of machine and its manufacturer are unknown to the widow, but before *Skinner v. Reed-Prentice Division Package Machinery Co.* (1977), 70 Ill. 2d 1, 374 N.E.2d 437, they were frequently available from the employer. Before *Skinner*, the employer cooperated not only because it had no concern about a third-party claim from a manufacturer but because it also had the incentive of recovering its worker's compensation lien if the widow's claim was successful. When *Skinner* removed protection, cooperation ceased. When faced with no cooperation from employers, possible statute of limitation problems, and probable statutes of repose problems (Ill. Rev. Stat. 1991, ch. 110, par. 13—213), plaintiff's lawyers would sometimes resort to a direct action against the employer. When the employer filed the appropriate motion to dismiss based on its immunity under the Workers' Compensation Act (Ill. Rev. Stat. 1991, ch. 48, par. 138.1 *et seq.*), the plaintiff's lawyer would explain that all he was really seeking was the identity of the manufacturer and hope that the judge would take the motion to dismiss under advisement while ordering the employer to provide the name of the manufacturer. If the judge was wise and compassionate enough (from the plaintiff's viewpoint) or biased and activist enough (from the defendant's viewpoint) to follow this practical procedure, the plaintiff learned the identity of the manufacturer, the employer's motion to dismiss was allowed, the plaintiff filed an action against the manufacturer, and discovery on the real case began.

This procedure was troublesome for a couple of reasons: it required plaintiff's lawyers to file what would easily be characterized as unfounded pleadings, and even for those who were willing to do so, it did not guarantee success. Troublesome though it may have been, the procedure continued to be used to learn identities, and as the committee comments indicate, problems underlying it were one of the reasons for the promulgation of Rule 224.

This historical review is included because it highlights again the purpose of Rule 224 and because it indicates that, factually, Rule 224 was an inappropriate vehicle for discovery in this case. Why was it inappropriate? Because, as the foregoing discussion has established, Rule 224 is to be used to ascertain identities only, and petitioner's counsel already knew identities. Recall that petitioner originally filed this action not only against St. Elizabeth's Hospital and Dr. Vest but

also against six other doctors. Petitioner's counsel claims he was attempting to gain information through this Rule 224 action to comply with section 2—622 (Ill. Rev. Stat. 1991, ch. 110, par. 2—622) and so that he did not damage any of the potential defendants' reputations by unnecessarily naming them in a malpractice action. Respondents' counsel claim he was using Rule 224 to circumvent the prefiling affidavit requirement of section 2—622 by obtaining prefiling depositions. We need not resolve that dispute, although we note that Rule 224 contains no reference to section 2—622 in either its body or its comments and that its effective date is four years after that of section 2—622. It was clear, however, from the original filing of this case that petitioner's counsel knew the identities of many of those who might be responsible for the decedent's treatment. Those identities are the only thing a Rule 224 action was intended to supply. Therefore, the inappropriateness of using Rule 224 in this case is only magnified by the fact that petitioner's counsel admitted before the trial court that he also had enough information to obtain section 2—622 reports on several of the respondents. A plaintiff who possesses this amount of knowledge obviously does not need to utilize Rule 224 to conduct further discovery, and the court should not have allowed such use.

The extent to which Dr. Vest was willing to cooperate was summarized by his personal counsel shortly before the contempt order was entered.

> "MR. MONTROY: That he is ready, willing and able to read the record anything [*sic*] that needs to be read, he is ready, willing and able to provide the identity of any persons who are—whose names appear in the record, but can't be deciphered, or even whose names questionably are decipherable. He's ready, willing and able to provide the names and if possible the addresses of any persons who were involved in the health care, and is ready, willing and able to provide the names of any persons involved along that line. And so that's basically what the—what the position is."

The record reveals that portions of the handwritten notes were not decipherable, and it also reveals that Dr. Vest interpreted them, albeit after being ordered to by the trial court. The record also establishes that Dr. Vest disclosed the name of a consultant whose identity was not revealed by the hospital records. Respondents concede that questions in these areas would have been appropriate under Rule 224, but they objected at trial to the questions directed toward other areas. For example, counsel for petitioner asked Dr. Vest, among other things: (1) whether he owed a duty of disclosure to petitioners, (2)

whether Dr. Vest's initial impression was that the decedent had metabolic acidosis as opposed to respiratory acidosis and the distinction between those two conditions, (3) what hypovolemic syndrome had to do with the lungs, and (4) what sepsis was and whether he had ordered certain tests to determine whether the patient had sepsis. Some of these inquiries were answered without objection and some of them were answered after the court had intervened and ordered Dr. Vest to answer. It was the last series of questions about sepsis that culminated with the question, "Did you attempt to take a test that would culture out the bacterial infection?" which led to the contempt finding and the order of incarceration.

The fourth district stated in *Shutes* that it had

> "faith in the abilities of the trial judges of this State to recognize and refuse to permit 'fishing expeditions' and other abuses, even without written guidelines." (*Shutes v. Fowler* (1991), 223 Ill. App. 3d 342, 346, 584 N.E.2d 920, 923.)

It is unfortunate that that faith was not upheld by the trial court in this case.

We reverse the circuit court's judgment of contempt, and pursuant to our powers under Supreme Court Rule 366(a)(5) (134 Ill. 2d R. 366(a)(5)), we dismiss the Rule 224 petition.

In view of our disposition we need not discuss the constitutional challenges to Rule 224 raised by the respondents.

Reversed; petition dismissed.

JUSTICE LEWIS, specially concurring:

I agree wholeheartedly with Judge Chapman's reasoning and interpretation of Supreme Court Rule 224 (134 Ill. 2d R. 224). There are a few matters that I believe should be discussed in a specially concurring opinion that, if included in the official majority opinion, would dilute the force of the majority opinion and which may be unnecessary to interpret the scope and intent of Rule 224.

We could have ruled on the facts of the case without going further in construing Rule 224. Clearly, the trial judge should have stopped the proceeding once petitioner's counsel admitted he had sufficient information for a section 2—622 report. (Ill. Rev. Stat. 1991, ch. 110, par. 2—622.) A limited ruling on the facts, however, would have left open the question of how far petitioner could have proceeded on his "fishing trip." The next petitioner might simply not tell the court when he had enough to make a section 2—622 report.

We have what I consider to be a Pandora's box, and this case raised the lid. If this court in any way opens the lid to the box by allowing petitioners to use Rule 224 as a means of discovery of more than the identity of one who may be liable in damages, then every potential plaintiff with competent counsel will use Rule 224 and push the questioning to the limits. Why would any attorney representing a potential plaintiff not use the rule to obtain a preliminary deposition and then, after the suit has been filed, obtain a subsequent deposition? The petitioner would hope to ambush or catch the respondent unprepared so that he would make a statement that would be inconsistent with his statements in subsequent depositions. We could be creating thousands of new cases in Illinois with all of the costs of disposing of such, if we interpreted Rule 224 as allowing more than the discovery of the identity of responsible persons.

I am further concerned that many petitioners would push the questioning of respondents to the limits, necessitating, as in this case, supervision by a judge. Why would a petitioner limit the scope of his or her questioning, if there are no boundaries or if the boundaries are to be established on a case-by-case basis? Petitioner's counsel practically admitted in oral argument that the courts would have to supervise almost every case. The backlog of cases in every county and in this court would soar.

This case provides an excellent example of some of the evils that can result when a respondent is subjected to such broad questioning prior to being sued. Word would spread, if we twisted the meaning and reasons for Rule 224 into a broad interpretation allowing far-reaching discovery. Every respondent desiring some protection from abuse and possible jailing would be forced to seek and pay the cost of counsel. The respondent may be innocent of any wrongdoing. The respondent may only be a witness or an employer not subject to a tort action; yet, the respondent would incur unnecessary legal costs just for self-protection. Where in our American system of justice can a citizen be hauled into court without any suit or accusation being filed against the citizen and be made to answer questions or else go to jail other than under Rule 224? Shouldn't we limit this encroachment on the freedom of an individual to very limited situations where the public interest outweighs our citizens' right to privacy and their freedom not to speak?

The petitioner's counsel argued that he only wanted to use Rule 224 to separate the guilty from the innocent parties, because he did not want to sue an innocent doctor. Petitioner alleges, therefore, that he was merely providing the respondent in this case with the opportu-

nity to prove his innocence. I am happy that counsel had this good intent, even though in counsel's quest for truth and justice he kept threatening the respondent with jail. I don't believe this is a case where petitioner's counsel offered to allow the respondent a fair opportunity to avoid being sued; rather, respondent was forced to appear before petitioner's counsel and ordered to answer all questions. Surely our system of law has not declined to a state where we order citizens to prove their innocence to an attorney at law!

The majority opinion not only interprets the intent of Rule 224 correctly, but it limits its use so that hopefully there will not be any more abuses of the rule. If counsel for a petitioner believes that there should be an exception made to the interpretation of Rule 224 set forth in the majority opinion, then counsel can obtain a ruling from the trial court before a citizen is hauled before an attorney, suffers an inquisition, and is made to incur the cost of counsel. The interpretation of Rule 224 may be gradually broadened, if good reason or the public interest is shown. Any broader interpretation of Rule 224 than allowed under the majority opinion will cause individual rights to be abused by aggressive counsel before the legal system can extricate the respondent.

We can speculate that there may be some rare cases in which a potential plaintiff may not know what a party may have done or said that caused plaintiff's injuries. The vast majority of cases, however, do not require the use of Rule 224. All we would be doing by opening the lid to this Pandora's box by allowing extensive questioning as to what was done or said by a respondent would be creating a false need for the use of Rule 224 in the vast majority of cases. The lid needs to stay on the box!

I also feel compelled to say a few words about the contempt portion of this case. In this case we have a hard-working and experienced trial judge. I am sure that anything we say in criticism of his ruling or conduct probably will not be as bad as the judge's own criticism of his ruling during the night or early morning hours immediately after his decision.

There are no hard-and-fast rules to guide a trial judge so that the judge can avoid landing in the dilemma where the judge feels that his back is against the wall and the contempt power is the only way out. In many cases there is no warning. Everything may be going smoothly and suddenly the trial judge is confronted with what the judge may consider to be a challenge to the court's authority. I suggest that the judge announce that he or she needs to think about the matter and that everyone else needs to think about it too. Then call a

recess. It may have helped in this case, as the judge would not have appeared to have been so brusque, and he would have had the time to consider the problem of what to do about the doctor's patients.

Here is an axiom that I proffer that may also help. The more certain you are of your interpretation of the law without reflecting upon or reviewing any law, the more certain it is that you are wrong. In this case the trial judge was absolutely certain of his interpretation of Rule 224, and his certainty may have contributed to the severity of the sanction that he imposed.

In this case, it is a reasonable assumption that the trial judge personally felt that the respondent doctor owed a moral duty to his patient's family to answer all of their questions about what happened to the patient. Petitioner's counsel was urging the judge on. We, of course, cannot decide the moral duty of a doctor to the patient's family in this opinion. Our concern is whether the doctor had to answer all of the patient's family's questions in a Rule 224 proceeding. The trial judge, in his quest to learn the truth from the doctor, became an advocate for the petitioner and lost his impartiality and his patience with respondent and his attorneys.

Finally, I suggest that there is a baseless tradition in the courts that the only way a judge can show his power over litigants and attorneys is to incarcerate them. In both contempt cases in which I have ruled against the trial judge, the trial judge gave the appearance that incarceration was his first choice of punishment, when it should be his last choice. (See *People ex rel. Finck v. Locher* (1988), 172 Ill. App. 3d 706, 526 N.E.2d 935.) Why are we so eager to treat civil litigants worse than criminals, when they have not violated any laws? In most cases there are a multitude of sanctions for contemptuous conduct that may be more effective than jail.

In most cases the trial judge has more options for punishment for contempt, but in a Rule 224 case the judge may have only two choices, fine or jail. The trial judge may have felt that doctors and insurance companies have lots of money, so that a fine would not get the question answered. However, jailing respondent and his counsel did not get the question answered either, nor did it help petitioner or St. Clair County. Petitioner's counsel had enough information for his section 2—622 report to file his lawsuit, so assessing all the costs of appeal of the Rule 224 proceeding would have been helpful to petitioner's counsel's practice and a stiff fine would have benefited St. Clair County. Jailing respondent and his counsel resulted in the supreme court of Illinois and this court expending a great amount of cost, time and trouble; so who, other than the taxpayer, was punished?

We all make mistakes. "To err is human." We are foolish and will only compound the error, if we do not learn from our experience.

JUSTICE GOLDENHERSH, concurring in part and dissenting in part:

While I concur with my colleagues that the contempt rulings against Dr. Vest and attorneys Montroy and Cremeens should be vacated, I dissent as to the majority's construction of Rule 224 (134 Ill. 2d R. 224).

Determining the scope of Rule 224 is central to this appeal. From the clear language of the rule, I conclude the majority's reading of Rule 224 is too restrictive and works to defeat its intent. In essence, the majority reads Rule 224 to allow discovery of identity alone, while the rule and its procedural context indicate otherwise.

Rule 224 reads as follows in its parts relevant to this appeal:

"Rule 224. Discovery Before Suit *to Identify Responsible Persons and Entities*

(a) Procedure.

(1) *Petition.*

(i) A person or entity who wishes to engage in discovery for the *sole purpose of ascertaining the identity of one who may be responsible in damages* may file an independent action for such discovery.

(ii) The action for discovery shall be initiated by the filing of a verified petition in the circuit court of the county in which the action or proceeding might be brought or in which one or more of the persons or entities from whom discovery is sought resides. The petition shall be brought in the name of the petitioner and shall name as respondents the persons or entities from whom discovery is sought and shall set forth: (A) the reason the proposed discovery is necessary and (B) the nature of the discovery sought and shall ask for an order authorizing the petitioner to obtain such discovery. The order allowing the petition will limit discovery to the *identification of responsible persons and entities* and where a deposition is sought will specify the name and address of each person to be examined, if known, or, if unknown, information sufficient to identify each person and the time and place of the deposition." (Emphasis added.) 134 Ill. 2d R. 224.

The majority quotes the same rule with this emphasis:

"(a) Procedure.

(1) *Petition.*

(i) A person or entity who wishes to engage in discovery for *the sole purpose of ascertaining the identity of one who may be responsible in damages* may file an independent action for such discovery.

(ii) The action for discovery shall be initiated by the filing of a verified petition in the circuit court of the county in which the action or proceeding might be brought or in which one or more of the persons or entities from whom discovery is sought resides. The petition shall be brought in the name of the petitioner and shall name as respondents the persons or entities from whom discovery is sought and shall set forth: (A) the reason the proposed discovery is necessary and (B) the nature of the discovery sought and shall ask for an order authorizing the petitioner to obtain such discovery. *The order* allowing the petition *will limit discovery to the identification of responsible persons* and entities and where a deposition is sought will specify the name and address of each person to be examined, if known, or, if unknown, information sufficient to identify each person and the time and place of the deposition." (Emphasis added.) (134 Ill. 2d R. 224.)

The majority then claims: "The language of the rule clearly limits discovery under it to the *identity* of those who may be responsible in damages." (Emphasis in original.) (241 Ill. App. 3d at 413.) This interpretation flies in the face of the plain language of the rule.

The clear intent of Rule 224 is to establish a discovery mechanism to identify parties who may be responsible in damages in a subsequent civil suit; it is not merely to identify a participant in the underlying transaction. The majority overemphasized identity while deemphasizing the responsibility aspect of those identified:

"The language of the rule clearly limits discovery under it to the *identity* of those who may be responsible in damages. Once the identity of such persons or entities has been ascertained, the purpose of the rule has been accomplished and the action should be dismissed." (Emphasis in original.) (241 Ill. App. 3d 413.)

"The rule does not say it is to be used for 'ascertaining who may be responsible'; it provides that it is for 'the *sole* purpose

of ascertaining the *identity* of one who may be responsible.' (Emphasis added.)" (241 Ill. App. 3d at 413.)

"Without the phrase 'of one who may be responsible,' the reader might not know whose identity was being sought, but that does not change the 'sole purpose' of the rule from a search for identity to a search for responsibility." 241 Ill. App. 3d at 414.)

" 'The order *** will limit discovery to the *identification* of responsible persons ***.' (Emphasis added.) (134 Ill. 2d R. 224.)" (241 Ill. App. 3d at 414.)

"Again, the focus is on a determination of identity and not on the determination of the responsibility of those identified." (241 Ill. App. 3d at 414.)

Grammatically, responsibility modifies identity in both the rule and committee comments. The majority, however, reads identity alone rather than the phrase as a whole.

The majority further claims the trial court was wrong in its analysis in five different ways; four of those allegations of error are themselves in error.

First, the majority has misread Rule 224, as I have discussed above. The majority similarly misconstrues the committee comments to Rule 224. Its added emphasis and commentary after the comments highlight identity while failing to consider its modifier of responsibility.

The majority has also misconstrued the two cases dealing with the rule. The *Guertin* case (*Guertin v. Guertin* (1990), 204 Ill. App. 3d 527, 561 N.E.2d 1339) is clearly distinguishable from the instant appeal. In *Guertin*, both the identity of the potential defendants *and the circumstances that could make her responsible in damages* were known. There were two theories of liability on which the plaintiffs could proceed in *Guertin*. One was that Hazel and her husband exerted undue influence over decedent Wilfred, and a second was that Wilfred did not know he was adding Hazel and her husband as joint tenants on certificates of deposit. At the time of appeal, the plaintiffs knew the identity of Hazel and enough about the underlying transaction that they could responsibly determine Hazel should be made a defendant in a subsequent suit. (See *Malmberg v. Smith* (1993), 241 Ill. App. 3d 428, 433 (Goldenhersh, J., dissenting).) In the instant case, the identity of Dr. Vest is known, but the majority does not consider whether information concerning his possible responsibility in damages is also known.

*Shutes v. Fowler* (1991), 223 Ill. App. 3d 342, 584 N.E.2d 920, did not deal with the questions before this court. *Shutes* dealt with Rule 224's constitutionality and the justiciability of a Rule 224 petition. The majority reads both *Shutes* and *Guertin* with an eye toward identity, while those courts recognized that the identified party must also be a potential defendant or responsible in damages. The assertion that when the trial court ruled, two other districts of the appellate court "had recognized that Rule 224 was to be used to ascertain only the *identities* of potential defendants" is not supported by those cases. (Emphasis in original.) 241 Ill. App. 3d at 416.

The majority's claim that this case actually did not warrant the use of Rule 224 is, again, a result of misreading Rule 224 as restricted to identities only. While petitioner's counsel knew the doctors' identities, under the clear language of Rule 224 the trial court could order limited discovery to determine if any of those identified "may be responsible in damages."

What is the proper scope of Rule 224 inquiry, and what guidelines should the trial court use? Answering these questions requires consideration of the context of Rule 224 discovery in a medical malpractice action.

Petitioner claims she was using Rule 224 discovery so she could comply with the affidavit requirements of section 2—622 of the Code of Civil Procedure (Ill. Rev. Stat. 1991, ch. 110, par. 2—622). Section 2—622 requires an affidavit of a qualified health professional that she has "determined, in a written report, after a review of the *medical record and other relevant material* involved in the particular action that there is *a reasonable and meritorious cause for the filing of such action*; and that the affiant has concluded on the basis of the reviewing health professional's review and consultation that there is a *reasonable and meritorious cause* for filing of such action." (Emphasis added.) (Ill. Rev. Stat. 1991, ch. 110, par. 2—622(a)(1).) Section 2—622 further provides for payment of reasonable expenses and attorney fees if allegations in the affidavit are found to be without reasonable cause and untrue. The purpose of section 2—622 is to encourage the filing of meritorious suits and deter the filing of frivolous malpractice actions; it compels reasonable investigation of the basis for an action so that pleadings are based on fact and made in good faith. (*De Luna v. St. Elizabeth's Hospital* (1992), 147 Ill. 2d 57, 588 N.E.2d 1139.) Rule 224 (137 Ill. 2d R. 224), which allows "ascertaining the identity of one who may be responsible in damages," is a logical complement to section 2—622 and a vital part of deterring frivolous lawsuits. (See also Supreme Court Rule 137 (134 Ill. 2d R. 137) (under which an attorney's signature warrants "that to the best of his knowledge, infor-

mation, and belief formed after reasonable inquiry [the pleading] is well grounded in fact"); *De Luna*, 147 Ill. 2d 57, 588 N.E.2d 1139.) Rule 224 is clearly limited in scope; given the context just discussed, its scope should be such that leads to a section 2—622 affidavit based on fact or a determination that one cannot obtain a section 2—622 affidavit. The overly restrictive reading of Rule 224 by the majority renders the rule almost useless in reaching this goal. I would instead read Rule 224 broadly enough so it plays a part in ensuring that malpractice actions and other suits filed in our courts are "reasonable and meritorious." (Ill. Rev. Stat. 1991, ch. 110, par. 2—622(a)(1).) This appears to be the intent of our supreme court in promulgating Rule 224.

Based on the above analysis, I would vacate the finding of contempt and imposition of sanctions and remand this cause for further proceedings not inconsistent with the clarifications of Rule 224.

While dissenting from the narrow reading of Rule 224, I also dissent from the broad condemnation of the trial judge in this case. It fails to take into account the context of hotly contested issues, the clash of strong-willed advocates and the lack of clear standards for these Rule 224 issues from a court of review. It is appropriate that we disagree with a trial judge on the law or an exercise of discretion. It is not appropriate that we condemn a good-faith decision. We should not forget that trial judges are often called upon to make hard and lonely judgments. When we review those decisions, we should contribute understanding guidance, not condemnation.