DENNIS SALEMI, Plaintiff-Appellant, v. KLEIN CONSTRUCTION COMPANY, Defendant-Appellee.

First District (5th Division)    No. 1—92—0177

Opinion filed August 19, 1994.—Rehearing denied September 21, 1994.

Donald J. Nolan, of Chicago (Joseph T. McGuire and Albert Durkin, of counsel), for appellant.

Kralovec, Marquard, Doyle & Gibbons, Chartered, of Chicago (Nancy J. Arnold, William E. Spizzirri, and Stephen J. Smalling, of counsel), for appellee.

JUSTICE GORDON delivered the opinion of the court:

Plaintiff filed a two-count complaint for injuries sustained as a laborer on a construction project. Count I was for violation of the Illinois Structural Work Act (Ill. Rev. Stat. 1985, ch. 48, pars. 60 through 69 (now 740 ILCS 150/1—9 (West 1992))), and count II was for negligence. A third-party complaint for contribution was filed by the defendant, Klein Construction Company, against Nu-Way Contracting Corporation, Standard King, Inc., and King/Nu-Way, a joint venture.

On April 22, 1991, summary judgment was entered in favor of defendant on count I. Subsequently, plaintiff filed a motion to reconsider which the trial court denied in an order entered on November 26, 1991. In its order of November 26, 1991, the court also granted the oral motion of the plaintiff to withdraw his negligence count (count

II), thus eliminating all pending counts in the primary action. The third-party action remains pending, although the parties have raised no issues in this appeal pertaining to it.

The following pertinent facts are gleaned from the submissions of the parties in connection with defendant's motion for summary judgment and are undisputed. The defendant, Klein Construction Company (hereinafter Klein), was a general contractor in charge of the erection of a bus barn structure on behalf of the Chicago Transit Authority. The project site, as described by the plaintiff in his deposition, was as large as two football fields surrounded by a fence and contained an interior temporary dirt road with branches radiating to various portions of the site. Plaintiff was an employee of Nu-Way Construction Company, a subcontractor hired to perform the sewer work for the project. According to the plaintiff, this work required, among other things, excavation of a trench around the perimeter of the site, grading the trench, laying sewer pipe in the trench, and moving pipe from the stockpile on the site to the portion of the trench where it would be installed.

At the time of this occurrence, other construction digging unrelated to the sewer trench was in process. This resulted in an accumulation of spoil, 14 feet high and 150 feet long, along the edges of the dirt construction road. No barrier or shoring was provided for this accumulation. As the sewer pipe was lowered into place, the sewer trench was refilled, but certain portions of that trench, including the area where plaintiff's injury occurred, were not compacted after refilling.

Plaintiff was injured as he was helping to move sewer tile from the stockpile to the edge of the portion of the sewer trench where these tiles were to be installed. A backhoe was used to move those tiles. Apparently, the tiles were suspended in a bundle from a cable which was attached to the bucket of the backhoe. According to the plaintiff, his assignment was to prevent the tiles from swinging into the machine. To prevent such contact, plaintiff stated that he was required to walk between the suspended tiles and the backhoe to the left of the machine. The plaintiff points out without challenge that because there were no tag lines, plaintiff was required to reach out to try to steady the suspended load manually. The suspended load was heavy and could not be completely steadied, but plaintiff was able to keep it from turning. When the backhoe crossed over any soft spots in the dirt road resulting from the failure to compact the dirt used as refill, the whole machine would lurch and require the plaintiff to hold onto the load to protect it. As the plaintiff and the backhoe were passing one of these soft spots near the dirt hill, a chunk of spoil

rolled down the hill and struck plaintiff's leg causing him to stumble. The plaintiff's foot was then caught in the tire of the backhoe, which seemed to suck in his foot, trapping it there. To free his foot, his fellow workers had to back the machine off.

Plaintiff brings this appeal from the order of April 22, 1991, granting partial summary judgment with respect to count I of his complaint and from the order of November 21, 1991, denying plaintiff's motion for reconsideration of that order. Although the third-party action for contribution remains pending, no findings pursuant to Supreme Court Rule 304(a) (107 Ill. 2d R. 304(a)) were obtained from the trial court.

OPINION

Although not raised by the parties, the court is obligated to consider its own jurisdiction *sua sponte*. (See *Ferguson v. Riverside Medical Center* (1985), 111 Ill. 2d 436, 490 N.E.2d 1252.) It would seem that the pendency of a third-party action for contribution or indemnity would necessitate a finding under Rule 304(a) (107 Ill. 2d R. 304(a)) before an appeal from a judgment entered in the primary action may be taken. (See *Petersen Brothers Plastics, Inc. v. Ullo* (1978), 57 Ill. App. 3d 625.) In *Ullo*, the plaintiff, Petersen Brothers Plastics, Inc., sought judgment against the defendant for the purchase price of goods sold to the defendant, Ullo. The defendant filed a third-party action against Beginnings, Inc., a third-party defendant, claiming that Beginnings undertook to pay Petersen for the goods purchased from Petersen by Ullo. Judgment was entered against Ullo in the primary action. Approximately five months later, the trial court vacated its judgment against the primary defendant, Ullo, from which plaintiff appealed. In dismissing that appeal the court stated that the appeal was not final for two reasons: (1) the third-party action by the primary defendant against the third-party defendant was still pending, and (2) the order vacating the judgment still left the primary plaintiff's action against Ullo pending, and, therefore, the primary action itself was not terminated.

■ While the court in *Ullo* considered that the pendency of the third-party action was in itself sufficient to bar an appeal from the order entered in the primary action, we do not believe that the holding in that case controls the facts in the case at bar. In this case the entire primary action against the defendant was terminated. Count I (the Structural Work Act count) was adjudicated in defendant's favor, and count II (the negligence count) was withdrawn. Therefore, no basis whatsoever was left for any claim of contribution or indemnity by the defendant against the third-party defendant

since no liability could attach against the primary defendant for which it could claim a right of contribution. Thus, the disposition of the primary action in effect disposed of the claim for contribution in the third-party action even though that claim was not formally terminated. Where the adjudication of the rights and liabilities in one action effectively disposes of the rights and liabilities in another, no Supreme Court Rule 304(a)(107 Ill. 2d R. 304(a)) finding is required even though the second action is not formally terminated. *Lynch Imports, Ltd. v. Frey* (1990), 200 Ill. App. 3d 781.

In *Lynch,* an appeal was taken from a summary judgment entered in favor of a seller in his primary action against the buyer for the purchase price of an automobile. The defendant buyer counterclaimed for damages resulting from the failure of the seller to deliver an acceptable car. The counterclaim was still pending when the defendant appealed the judgment entered in the primary action and no finding under Supreme Court Rule 304(a) was obtained. The court held that a Rule 304(a) finding was unnecessary since the summary judgment favoring the seller in its action for the purchase price in effect determined and disposed of all dispositive issues involved in the counterclaim as well, even though no formal order with respect to the counterclaim was entered. Here, too, once the primary action against the defendant was terminated, with no liability accruing to him, the defendant's third-party action for contribution must likewise fall since there can be no liability on the part of the defendant for which any contribution would be owing. Consequently, even though the third-party action was not formally terminated, the appeal from the primary action is not piecemeal, since no further appeal from the third-party action for contribution can reasonably be anticipated where no viable primary action against defendant remains.

This effectively distinguishes the decision in *Petersen Brothers Plastic v. Ullo* since in that case the primary action against defendant for damages remained alive and, consequently, the third-party action for indemnity remained viable as well. Thus in *Ullo* an appeal from the primary action alone would have been piecemeal since it left open the possibility of another appeal being taken from the third-party action after it was adjudicated. Therefore, the requirement of a Rule 304(a) finding in that case should not under its rationale carry over to the facts of this case.

We therefore proceed to determine the merits of this appeal. Both parties agree that, under the decision of the Illinois Supreme Court in *Lafata v. Village of Lisle* (1990), 137 Ill. 2d 347, there is no longer any question that the backhoe which injured the plaintiff was at the time in question deployed in a manner to come under the am-

bit of the Structural Work Act. In *Lafata,* as in this case, plaintiff was assigned to accompany a machine, an endloader, which was transporting pipe from one part of the construction site where it was stockpiled to other portions of the site where it would be installed. The pipe was attached by wire cable to the bucket of the endloader hoisting the pipe off the ground during transport. Plaintiff's job was to walk ahead of the endloader holding one end of the pipe section to prevent it from tilting in the other direction. During the course of such transport, plaintiff tripped on an unidentified object and was then struck by the endloader, which came to rest with one wheel on the plaintiff. The defendant village moved for summary judgment on the grounds that the endloader was not a mechanical contrivance within the meaning of the Structural Work Act insofar as it was used to transport materials rather than as a support for tools or equipment or workers. Alternatively, the village argued that the violation of the Act was not the proximate cause of plaintiff's injuries. The trial court granted summary judgment to the defendant on the first ground and did not reach the alternate contention.

In upholding the appellate court's reversal of the summary judgment (*Lafata v. Village of Lisle* (1989), 185 Ill. App. 3d 203), the Illinois Supreme Court in *Lafata* stated:

> "The defendants reason that because the endloader was not used in the installation of the pipe sections in the sewer system, it was not used in the construction of the structure. We believe, however, that the danger inherent in the way in which the endloader was used had a peculiar connection with the construction of the structure. The transport of the pipe section from the stockpile to the place where it was to be installed was crucial to the installation of the sewer system and sufficiently unique to a construction site to fall within the coverage of the Act. Moreover, the plaintiff here and the plaintiff in *Prange [Prange v. Kamar Construction Corp.* (1982), 109 Ill. App. 3d 1125] were exposed to the same risk inherent in the construction industry at the time of the respective incidents. We do not believe that the General Assembly meant for coverage of the Act to depend on how the device was to be used after the accident occurred." 137 Ill. 2d at 357-58.

■ Here, as in *Lafata* the machine which was the instrumentality that inflicted the injury was being used to transport construction material. Plaintiff was connected to that use insofar as he was assigned to walk alongside the transport in order to prevent damage to the load. Consequently, under *Lafata*, there can be little question that the machine in this case, the backhoe, would come within the purview

of the Act. Accord *Prange v. Kamar Construction Corp.* (1982), 109 Ill. App. 3d 1125; see also *Meyer v. Caterpillar Tractor Co.* (1990), 135 Ill. 2d 1.

Defendant concedes that under *Lafata* the use of the backhoe in this case at the time of the occurrence came within the ambit of the Structural Work Act. Defendant contends, however, that summary judgment is warranted upon the alternate contention in *Lafata* that the hazards covered by the Structural Work Act were not the proximate cause of plaintiff's injuries. That alternate contention was never reached for discussion in *Lafata.* (See *Lafata,* 137 Ill. 2d at 358 ("Defendants also argue here that a violation of the Structural Work Act was not a proximate cause of plaintiff's injuries. \*\*\* Because this issue was not decided in the lower courts, we decline to reach the merits of the argument here").) In the instant case, the insufficiency of the causal connection between the hazardous nature of the support device and injury was the rationale of the trial judge as well in granting summary judgment to the defendant. In so deciding, the trial court relied on *Dvorak v. Primus Corp.* (1988), 168 Ill. App. 3d 625, stating, "I think there was insufficient causal connection here between the hazardous nature of the support device provided and the injuries sustained. I don't think it was satisfactorily adduced. I think Dvorak controls."

In *Dvorak,* the plaintiff, a construction worker, was injured when he crawled inside a concrete sewer pipe section which had not yet been installed to retrieve gaskets which were stored there. While his lower legs extruded from the pipe section, a backhoe, which had been excavating a sewer, ran over them as it was backing up to reposition itself. Plaintiff claimed that the defendant was in violation of the Structural Work Act. In affirming a summary judgment entered in favor of the defendant, the court in *Dvorak* first questioned whether the backhoe was a support device under the Act. However, the court concluded that even if the machine was a support device within the ambit of the Act, the hazard which comes within the protection of the Act was not the proximate cause of the injury. The court stated:

> "The danger involved here was simply that someone might be struck or run over by the backhoe. Although plaintiff's ultimate injury was very serious, this was not one of the ultrahazardous risks which the legislature sought to alleviate. [Citation.] The backhoe did not collapse under the weight of its load or drop its load onto plaintiff. Rather, plaintiff was run over by it. His injury could as easily have been caused by any tractor-like machine being used in a manner wholly unrelated to the activities specified in the Act. Accordingly, the trial court correctly granted summary judgment in favor of defendants." 168 Ill. App. 3d at 631-32.

■ Plaintiff seeks to distinguish *Dvorak* on the basis that the plaintiff there had only a fortuitous contact with the backhoe. On the other hand, in this case plaintiff was assigned to accompany the machine to help steady the load. However, the fact remains that plaintiff's injury in this case, as in *Dvorak,* was not occasioned by the machine's malfunction as a supporting device but by the collateral character of the machine as a transport vehicle. In other words, plaintiff was neither knocked down nor injured by the swaying load or by any aspect of the support function of the machine. Rather, his injury came about when he stumbled as a result of conditions unrelated to the use and function of the backhoe other than the fact that the movement of the backhoe determined where plaintiff happened to be at the time of the injury. Thus, the analysis in *Dvorak* still applies since the hazard protected under the Act, namely, the use of the backhoe as a support device, was not alleged to have malfunctioned or tipped over as a result of the load. The backhoe simply ran over plaintiff as any "tractor-like machine" might have done to someone stumbling in its path. Nor was the plaintiff caused to stumble as a result of any activity or malfunction of the hoist but rather as a result of being struck by debris coming from an external source while treading upon the uncompacted soil in the pathway.

The analysis of our supreme court in *American National Bank & Trust Co. v. National Advertising Co.* (1992), 149 Ill. 2d 14, is relevant and helpful. There, plaintiff's decedent was electrocuted when he came into contact with a powerline located $4^{1}/2$ feet above a walkway which defendant maintained on the reverse side of its billboard. The walkway was maintained to facilitate the maintenance of that billboard. The supreme court overturned the appellate court's reversal of a summary judgment which was entered by the trial court in defendant's favor on the structural work count of the complaint filed in that cause. The supreme court reasoned that since there was no question raised as to the stability of the scaffold, the improper placement of the scaffold with respect to the power line did not bring that injury under the umbrella of the Act. In its analysis, the court raised and answered the question of whether the Act seeks to "ensure only that it provides proper support, or whether the Act also mandates placement in a location where the worker will be free from ambiant hazards." (149 Ill. 2d at 23.) In resolving this question, the court concluded:

> "Since a statute is passed as a whole, and animated by one general purpose, each part should be construed with every other part so as to produce a harmonious whole. [Citation.] Subsequent sections of the Act address the manner in which adequate support

should be provided, *e.g.*, by limiting loads on a structure. The required protective measures are directed towards preventing hazards such as those of workers falling from a structure or being struck or crushed by materials due to insufficient support. There is no mention of potential injuries due to other causes. Thus, we can find no specific support in any part of the Act for plaintiff's contention that it was intended to provide protection from electrical hazards." 149 Ill. 2d at 23-24.

We note that in *American National Bank* the mere "but for" causal connection between plaintiff's presence on the scaffold and his electrocution resulting from his proximity to the electrical wires was not sufficient to bring him within the protection of the Act. Here, too, the failure to furnish a tag line with which to steady the load did not result in any failure of the machine as a support for the materials which it carried. It simply resulted in placing the plaintiff in the path of the machine. It was not the machine which caused the plaintiff to stumble nor was it a malfunction of its hoist system which caused it to run over the plaintiff once he was on the ground in its path. Just as the court in *American National Bank* held that electrocution was not a hazard protected by the Act, so too did the court in *Dvorak* hold that being run over by a material mover was not a hazard protected by the Act, stating as previously noted, "[t]he backhoe did not collapse under the weight of its load or drop its load onto plaintiff. Rather, plaintiff was run over by it. His injury could as easily have been caused by any tractor-like machine being used in a manner wholly unrelated to the activities specified in the Act." *Dvorak*, 168 Ill. App. 3d at 632; see also *Meyer v. Caterpillar Tractor Co.* (1990), 135 Ill. 2d 1, 13, citing to *Urman v. Walter* (1981), 101 Ill. App. 3d 1085, 1095-96 (stating, "As noted by the appellate court in *Urman*, if a person trips over a ladder rather than falls off of it, he probably will not be able to claim a Structural Work Act violation because his injury has no connection with the hazardous nature of the ladder").

■ Nor can plaintiff seek to bring himself under the Act because of the uncompacted condition of the terrain upon which he stumbled in the construction site. The laws establish beyond question that the ground is not a support device within the meaning of the Act. (*Tenenbaum v. City of Chicago* (1975), 60 Ill. 2d 363, 325 N.E.2d 607.) Nor would support or planking be required because of any softness or depression in the terrain of a site under construction. As stated in *Harper v. Schal Associates, Inc.* (1987), 159 Ill. App. 3d 542, 548, which distinguishes the facts in *Rambert v. Advance Construction Co.* (1985), 134 Ill. App. 3d 155, 479 N.E.2d 1007, cited by the plaintiff:

"Unlike the factual situations at issue in *Ashley* [*v. Osman & Associates, Inc.* (1983), 114 Ill. App. 3d 293, 448 N.E. 2d 1011] and *Rambert*, any planking present here would not have been 'imbued with the hazardous possibility of a person falling through the plank into the ***[depression] below, similar to the hazard presented when a worker traverses a scaffold erected above ground.' [Citation.] Rather, the possibility of falling off planking on the ground into a depression in the ground, as opposed to a substantial hole such as was present in *Rambert*, is not only remote, but likewise not generally recognized as a hazardous possibility." Accord *Carnevale v. Inland Ryerson Building Systems* (1988), 169 Ill. App. 3d 740.

■ Plaintiff contends that whether a hazard protected under the Structural Work Act was the proximate cause of plaintiff's injury is a fact issue not appropriate to summary judgment. We disagree. The threshold issue is whether the hazard which caused the injury is covered by the statute. This presents a clear question of law. (See *American National Bank*, 149 Ill. 2d at 22 ("Whether the Act covers injuries caused by contact with a power line is a matter of statutory construction and therefore a question of law for the court to determine. *Vuletich* [*v. United States Steel Corp.* (1987)], 117 Ill. 2d [417,] at 421").) Nor can such a determination of law be preempted or transformed into a factual dispute by an affidavit of an expert, such as the one which plaintiff filed in this case, which purports to advance the affiant's interpretation of the Act. *Christou v. Arlington Park Washington Park Race Tracks Corp.* (1982), 104 Ill. App. 3d 257, 432 N.E.2d 920.

For the foregoing reasons, we conclude that the trial court properly entered summary judgment in favor of the defendant.

Affirmed.

MURRAY, P.J., and McNULTY, J., concur.