JOSEPH S. BEALE, Petitioner-Appellee, v. EDGEMARK FINANCIAL CORPORATION, Respondent-Appellant.

First District (5th Division)   No. 1—94—2235

Opinion filed March 29, 1996.

Paul E. Freehling and Victoria P. Pappas, both of D'Ancona & Pflaum, of Chicago, for appellant.

Reuben L. Hedlund, Charles A. Tausche, Edward F. McCormack, and Edwin L. Durham, all of Hedlund, Hanley & John, of Chicago, for appellee.

JUSTICE GORDON delivered the opinion of the court:

This is an appeal from an order granting a Supreme Court Rule 224 (134 Ill. 2d R. 224) petition for presuit discovery. The issues presented for review are whether Rule 224 authorizes presuit discovery of information beyond the names and addresses of persons "who may be responsible in damages" and whether Rule 224 can be used if the petitioner is aware of the identity of at least one defendant at the time of filing his petition.

Before addressing the merits of the instant appeal, we must first address this court's jurisdiction to hear it. Although the appellee does not contest appellant's argument that jurisdiction exists, jurisdiction cannot be stipulated to or waived by the parties (*Provident Life & Accident Insurance Co. v. Smith*, 266 Ill. App. 3d 705, 639 N.E.2d 627 (1994)); and this court must determine *sua sponte* whether jurisdiction exists (*Salemi v. Klein Construction Co.*, 266 Ill. App. 3d 110, 639 N.E.2d 629 (1994)). In this regard, we must determine whether the trial court order granting a Rule 224 petition for discovery is a final and appealable order pursuant to Supreme Court Rule 301 or whether the respondent must incur a contempt citation before he can seek review of the correctness of the underlying discovery order.

Generally, an order allowing discovery or directing disclosure of information is considered interlocutory and is not appealable until the underlying action is completed. *In re Marriage of Young*, 244 Ill. App. 3d 313, 614 N.E.2d 423 (1993). In order to test the validity of the discovery order, the party must refuse to comply and seek the imposition of a contempt citation and sanctions which are final and appeal-

able orders. *Laurent v. Brelji*, 74 Ill. App. 3d 214, 392 N.E.2d 929 (1979); see *Almgren v. Rush-Presbyterian-St. Luke's Medical Center*, 162 Ill. 2d 205, 642 N.E.2d 1264 (1994); *Fidelity Financial Services, Inc. v. Hicks*, 267 Ill. App. 3d 887, 642 N.E.2d 759 (1994). In the instant case, no contempt order was entered and no sanctions were imposed. Appellate jurisdiction exists nevertheless since we find that a discovery order entered on a Rule 224 petition is final because it finally adjudicates the rights of the parties and terminates the litigation (see *F.H. Prince & Co. v. Towers Financial Corp.*, 266 Ill. App. 3d 977, 640 N.E.2d 1313 (1994); *Anest v. Bailey*, 265 Ill. App. 3d 58, 637 N.E.2d 1209 (1994)).

■ The filing of a Rule 224 petition creates an independent action for discovery for the "sole purpose of ascertaining the identity of one who may be responsible in damages." 134 Ill. 2d R. 224(a)(1)(i). The relief sought in that action is the entry of an "order authorizing the petitioner to obtain *** discovery [of] the identification of responsible persons and entities" (134 Ill. 2d R. 224(a)(1)(ii)). Here, the trial court granted petitioner's discovery request and ordered the respondent to turn over a document that, in the court's opinion, would identify certain persons who could be responsible in damages to the petitioner. As no other relief is permitted by a Rule 224 petition, the entry of that order terminated the proceedings.

■ The finality of an order rendered on a Rule 224 petition can be analogized to an order entered pursuant to a petition for enforcement of an administrative subpoena *duces tecum*, the subject of an appeal in *Laurent v. Brelji*. In that case, the subpoena had been issued in an underlying wrongful discharge action pending before the Civil Service Commission. When the doctor against whom the subpoena was issued refused to comply, the underlying plaintiff and the Commission filed an enforcement petition in the circuit court. The circuit court ordered the recusant doctor to testify and produce the required records; and the doctor appealed. In addressing its jurisdiction, the appellate court stated:

"The absence of an order of contempt in this case, however, does not deprive us of jurisdiction over the matter, since we conclude the order of the circuit court was final and not interlocutory. An order which in substance finally adjudicates the rights of the parties and terminates the litigation is final and appealable. [Citation.] Here, the proceeding before the circuit court was a separate, independent action. (See Ill. Rev. Stat. 1977, ch. 127, par. 63b116.) After the court ordered the recusant witness to testify and produce the records, the proceeding before it was terminated. In that sense it was distinguishable from other discovery orders

entered in a cause pending in the same court. The order of the court finally determined the rights of the parties before it and terminated the litigation. [Citations.]" 74 Ill. App. 3d at 216, 392 N.E.2d at 930-31.

For similar reasons, we hold that the trial court's order granting petitioner's Rule 224 discovery request was a final and appealable order. The Rule 224 proceeding was a separate and independent action. Once the Rule 224 petition was ruled upon, the rights of the parties were determined and the litigation was terminated. Thus, we have jurisdiction to hear the matter before us pursuant to Supreme Court Rule 301.

As noted above, the instant appeal raises issues concerning the scope of discovery pursuant to Supreme Court Rule 224. On March 1, 1994, a verified petition for presuit discovery was filed by petitioner, Joseph S. Beale, against EdgeMark Financial Corporation (Edge-Mark) and Harris Trust & Savings Bank (Harris). Beale alleged that he was a former EdgeMark shareholder and that prior to November 2, 1993, he had pledged 145,000 shares of EdgeMark stock to Harris as collateral for a loan from Harris and 4,000 shares to Merchandise National Bank of Chicago (Merchandise) as collateral for a loan from Merchandise. In connection with the stock pledge between Beale and Harris, Beale alleged that he and Harris entered into an agreement whereby Beale could reacquire his EdgeMark shares before July 31, 1993, at a price of $24 per share. Beale alleged that certain officers and directors of EdgeMark were aware of this agreement with Harris and withheld information from Beale concerning plans and negotiations for the sale of EdgeMark. Beale did not exercise his option prior to July 31, 1993, and Harris has refused Beale's subsequent efforts for reacquisition. With respect to the 4,000 shares pledged to Merchandise, Beale alleged that Merchandise "forcibly" and improperly sold that stock on or about October 1, 1993 at $22 per share "at a time when the board of directors of Merchandise National Bank [some of whom were also EdgeMark directors] and the board of directors of EdgeMark had reason to believe that a sale of EdgeMark in excess of $35 per share was imminent."

The petition further alleged that on November 2, 1993, Edge-Mark publicly announced that it had entered into an acquisition agreement with Old Kent Financial Corporation (Old Kent). In accordance with that agreement, Old Kent offered to pay approximately $43 per share of EdgeMark common stock. Beale alleged that prior to this public announcement, EdgeMark stock was trading at $23.75 per share and that he "ha[d] reason to believe that officers, directors and/or other insiders were purchasing EdgeMark stock during the

time when they were withholding *** material information" with respect to the plans and negotiations for the sale of EdgeMark.

The Rule 224 petition further alleged that on December 14, 1993, the National Association of Securities Dealers, Inc. (NASD), wrote to EdgeMark's president and chief executive officer, Charles Bruning, requesting that EdgeMark identify whether certain persons and entities listed in an attached letter

"had a personal, professional or any other type of affiliation with [Edgemark], its officers, directors or representatives *** [which] could make them privy to non-public information concerning the business activities of [EdgeMark] *** particularly *** with respect to the events which preceded the press release made on November 2, 1993 regarding the company's definitive agreement to be acquired by [Old Kent]."

The NASD also asked Bruning to "state when and under what circumstances any knowledge of your company's activities may have been gained by them." The NASD letter and the attached list of names and addresses of 36 individuals or married couples were included as an exhibit to Beale's Rule 224 petition.

The Rule 224 petition concluded with allegations that the conduct of EdgeMark and certain of its officers and directors constituted fraud and breach of fiduciary duty and violated federal and Illinois securities laws. With respect to respondent EdgeMark, the petition sought: (1) discovery of all information provided to the NASD in response to the NASD letter; (2) discovery into the transfer to an unknown party of the EdgeMark stock that Beale had pledged to Merchandise Bank; and (3) the production of minutes from EdgeMark's 1993 board meetings to enable Beale to determine which of EdgeMark's officers and directors withheld information for the purpose of causing Beale to lose his option rights against Harris. The trial court granted petitioner's first request, ordering EdgeMark to turn over to petitioner a copy of EdgeMark's response to the NASD letter, and limited discovery concerning the second and third requests to the identity of the unknown transferee and to the names of the officers and directors who knew of the proposed acquisition of EdgeMark by Old Kent.

EdgeMark complied with petitioner's second and third discovery requests but moved to modify the court's order with respect to the first request seeking to limit that discovery to the names of the persons identified by EdgeMark in its response to the NASD letter. The trial court reserved ruling on EdgeMark's motion and ordered

an *in camera* review of EdgeMark's NASD response.[1] On June 9, 1994, after that review, the trial court denied EdgeMark's motion and ordered EdgeMark to turn over the document to Beale. Edge-Mark filed its notice of appeal, and pursuant to EdgeMark's motion, this court entered a stay of the trial court's June 9, 1994, order pending the appeal.

■ Supreme Court Rule 224(a) (134 Ill. 2d R. 224(a)) provides in pertinent part as follows:

"(i) A person or entity who wishes to engage in discovery for the sole purpose of ascertaining the identity of one who may be responsible in damages may file an independent action for such discovery.

(ii) *** The order allowing the petition will limit discovery to the identification of responsible persons and entities ***."

The scope of this rule has been addressed by the Third, Fourth and Fifth Districts of the Illinois Appellate Court. In *Guertin v. Guertin*, 204 Ill. App. 3d 527, 561 N.E.2d 1339 (1990), the third district limited Rule 224's application to situations where the identity of the defendant was unknown. In that case, the petitioners speculated that their sister-in-law had exerted undue influence in the execution of a will by a deceased relative and sought to depose her and bank officials before the filing of a complaint. The appellate court reversed the trial court and vacated the civil contempt citation issued when the sister-in-law refused to appear for the deposition, finding that the trial court had no authority either under the common law, the Code of Civil Procedure or Supreme Court Rules to order the deposition. The court found Supreme Court Rule 224 "inapplicable *** as the identity of the defendant [was] already known." 204 Ill. App. 3d at 531, 561 N.E.2d at 1342. The petitioner's knowledge of identity included not only the name of the potential defendant but information concerning that individual's dealings with a deceased relative that would suggest undue influence in the execution of a will.

In *Shutes v. Fowler*, 223 Ill. App. 3d 342, 584 N.E.2d 920 (1991), the fourth district upheld the constitutionality of Rule 224 and stated that discovery under that rule was "limited to ascertaining the identities of potential defendants" (223 Ill. App. 3d at 345, 584 N.E.2d at 923). The court affirmed the trial court order requiring petitioner's employer to disclose the identities of other companies who were involved at the construction site where the petitioner was injured.

In two cases decided on the same day, the appellate court for the

[1]Pursuant to the parties' stipulation at oral arguments, this court also has conducted an *in camera* review of the letter from EdgeMark to the NASD.

fifth district held that discovery under Rule 224 was limited to the ascertainment of " 'the *identity* of one who may be responsible.' " (Emphasis in original.) *Roth v. St. Elizabeth's Hospital*, 241 Ill. App. 3d 407, 413, 607 N.E.2d 1356, 1361 (1993), quoting 134 Ill. 2d R. 224; see also *Malmberg v. Smith*, 241 Ill. App. 3d 428, 607 N.E.2d 1370 (1993). In *Roth*, the petitioner sought the production of medical records and the deposition of the respondent doctor who rendered medical care to petitioner's decedent. The petitioner argued that she should be able to engage in broad discovery in order to make a determination of "who may be responsible in damages." The respondent conceded that petitioner was entitled to know the name of the consulting doctor but refused, when deposed, to answer such questions as whether the respondent doctor owed a duty of disclosure, whether the decedent exhibited certain medical conditions and whether certain medical tests were ordered. The trial court held the doctor in contempt.

In reversing the contempt citation and dismissing the Rule 224 petition, the appellate court held that Rule 224 allowed a search for identity, not responsibility. In support of this conclusion, the court quoted the committee comments to Rule 224 and emphasized the following language therein:

" 'This rule provides a tool by which a person or entity may, with leave of court, compel limited discovery before filing a lawsuit in an effort to determine the *identity* of one who may be liable in damages. *The rule is not intended to modify in any way any other rights secured* or responsibilities imposed *by law.* It provides a mechanism for plaintiffs to ascertain *the identity of potential defendants* in a variety of civil cases ***. *** The rule facilitates the *identification of potential defendants* through discovery depositions or through any of the other discovery tools set forth in Rules 201 through 214. The order allowing the petition will limit discovery to the *identification of responsible persons and entities.*' " (Emphasis in original.) *Roth*, 241 Ill. App. 3d at 414, 607 N.E.2d at 1361, quoting 134 Ill. 2d R. 224, Committee Comments, at 188-89.

According to the *Roth* court:

"The comments make it abundantly clear that: (1) 'one who may be responsible' means a 'potential defendant'; (2) the order should '*limit* discovery to the identification ***'; and (3) the 'rule is not intended to modify in any way any other rights secured *** by law,' *i.e.*, the rule is not intended to abrogate or to replace the general discovery provisions contained in Supreme Court Rule 201 *et seq.*" (Emphasis in original.) *Roth*, 241 Ill. App. 3d at 414-15, 607 N.E.2d at 1361.

In further support of its conclusion, the *Roth* court cited *Guertin v. Guertin* and *Shutes v. Fowler*. The court agreed with the observation made in *Shutes* that Rule 224 was intended to supplement section 2—402 of the Code of Civil Procedure, which allows for full discovery of named respondents once a lawsuit is filed against at least one known defendant. *Roth* stated, "[o]nce [the] identity [of at least one defendant] is learned, a case can be filed and either the general discovery provisions of Rule 201 *et seq.* or the provisions of section 2—402 can be utilized to determine who is responsible." 241 Ill. App. 3d at 416, 607 N.E.2d at 1362. Accordingly, the *Roth* court dismissed the Rule 224 petition for legal and factual reasons, finding the plaintiff sought information directly related to liability and because the petitioner knew the names of the individuals who might be responsible for the decedent's treatment at the time the petition was filed.

In *Malmberg v. Smith*, the second fifth district decision, the Rule 224 petitioner knew the identity of the potential libel defendant, a co-employee, and knew that he had accused the petitioner of illegal drug use while on duty. (This accusation allegedly resulted in petitioner's 30-day suspension from his job.) The petitioner sought to discover the contents of the statement made by the co-employee allegedly to determine whether a libel action could be maintained against him. The court, in reliance on its *Roth* decision as well as the other districts' decisions in *Shutes* and *Guertin*, reversed the trial court and dismissed the Rule 224 petition finding Rule 224 inapplicable since the identity of the potential defendant was already known.

Partial dissents to *Roth* and *Malmberg*[2] by Justice Goldenhersh found the majority's reading of Rule 224 "too restrictive." *Roth*, 241 Ill. App. 3d at 424, 607 N.E.2d at 1367 (Goldenhersh, J., concurring in part, dissenting in part); see *Malmberg*, 241 Ill. App. 3d at 433-35, 607 N.E.2d at 1373-75. The *Roth* dissent emphasized alternate language in Rule 224 as well as in the committee comments and opined:

> "The clear intent of Rule 224 is to establish a discovery mechanism to identify parties who may be responsible in damages in a

---

[2]Justice Goldenhersh concurred in the majority's vacatur of the contempt ruling in *Roth v. St. Elizabeth's Hospital*, 241 Ill. App. 3d 407, 424, 607 N.E.2d 1356, 1367 (1993) (Goldenhersh, J., concurring in part, dissenting in part) and concurred in the majority's disposition of the issue of sovereign immunity in *Malmberg v. Smith*, 241 Ill. App. 3d 428, 433, 607 N.E.2d 1370, 1373 (1993) (Goldenhersh, J., concurring in part, dissenting in part).

subsequent civil suit; it is not merely to identify a participant in the underlying transaction. The majority overemphasized identity while deemphasizing the responsibility aspect of those identified ***. Grammatically, responsibility modifies identity in both the rule and committee comments. The majority, however, reads identity alone rather than the phrase as a whole." *Roth*, 241 Ill. App. 3d at 425-26, 607 N.E.2d at 1368 (Goldenhersh, J., concurring in part, dissenting in part).

The *Roth* dissent concluded that while "Rule 224 is clearly limited in scope," its scope should allow the discovery of enough information to "ensur[e] that malpractice actions and other suits filed in our courts are 'reasonable and meritorious.' " *Roth*, 241 Ill. App. 3d at 428, 607 N.E.2d at 1370 (Goldenhersh, J., concurring in part, dissenting in part), quoting Ill. Rev. Stat. 1991, ch. 110, par. 2—622(a)(1) (now 735 ILCS 5/2—622(a)(1) (West 1994)). See also *Malmberg v. Smith*, 241 Ill. App. 3d 428, 433, 607 N.E.2d 1370 (Goldenhersh, J., concurring in part, dissenting in part) (although petitioner knew identity of potential libel defendant, petitioner should have been entitled to discover contents of statement in order to make reasonable inquiry into facts to determine whether libel cause of action existed).

We do not read the majority opinion in *Roth* or *Malmberg* as narrowly as the dissents therein. Nor do we read *Guertin*, upon which *Roth* relies, that narrowly. None of these cases preclude discovery solely on the basis of the petitioner's knowledge of a name only.[3] In each of those cases, at the time the Rule 224 petition was filed, the

---

[3]EdgeMark relies on language in *Roth v. St. Elizabeth's Hospital*, 241 Ill. App. 2d 407, 607 N.E.2d 1356 (1993), that the Rule 224 petition was factually inappropriate because the petitioner admittedly knew the names of several individuals involved in the decedent's medical care. In reliance on that language, EdgeMark argues that Beale was not entitled to utilize Rule 224 because he knew the identity of some defendants and had filed a federal lawsuit against them that was pending at the time the trial court ruled upon Beale's Rule 224 petition. We disagree. As discussed in the text of this opinion, *Roth* did not hold that Rule 224 discovery is not permitted where the petitioner knows the name of a potential defendant. In fact, the court recognized that the petitioner was permitted access by way of her Rule 224 petition to the name of an additional doctor who acted as a consultant. See 241 Ill. App. 3d at 419, 607 N.E.2d at 1364. *Roth* held that Rule 224 discovery is not permissible where the petitioner knows the names and certain other information that establishes the potentiality for liability. In *Roth*, the petitioner knew the names of the doctors as well as their liability potential in the fact that they had rendered medical care to the decedent. The petitioner's Rule 224 petition was denied because it sought specific information concerning actual liability.

connection of each individual to the injury involved was known. As such, each was already identified as someone "who may be responsible." In *Malmberg*, the petitioner knew that the respondent had made an allegedly false statement about his drug use. In *Guertin*, the petitioners were privy to facts upon which they surmised that the respondent had exercised undue influence over a deceased relative. In *Roth*, the petitioner knew that the individuals had rendered medical care to the decedent. Thus, *Roth* recognized that a Rule 224 petitioner should be able to utilize that rule to determine " 'the identity of one who *may be* responsible.' " (Emphasis omitted and added.) 241 Ill. App. 3d at 413, 607 N.E.2d at 1361, quoting 134 Ill. 2d R. 224. *Roth* only sought to preclude use of that rule to determine who in fact *was* responsible. The court dismissed the petition because the petitioner sought information concerning the latter. The questions asked by the petitioner were clearly directed at actual liability or responsibility— the course of treatment, the standard of care—rather than potential liability—who were the physicians involved in the medical care of the decedent.

■ Our reading of Rule 224 leads us to similarly conclude that the purpose of that rule is to allow discovery to ascertain "the identity of one who may be responsible in damages." 134 Ill. 2d R. 224; see also 134 Ill. 2d R. 224, Committee Comments, at 188 (Rule 224 "provides a tool by which a person or entity may, with leave of court, compel limited discovery before filing a lawsuit in an effort to determine the identity of one who may be liable"). Emphasis should not be placed on the word "identity" alone but, rather, on the entire phrase "identity of one who may be liable." In order to determine "who may be liable," one must be able to identify those individuals or entities who stand in the universe of potential defendants. Where the petitioner is apprised of a sufficient connection to the injury by an individual or entity so as to place such individual or entity within the universe of potential defendants, the petitioner may not seek further discovery of facts pertaining to any actual wrongdoing. See *Roth v. St. Elizabeth's Hospital*, 241 Ill. App. 3d 407, 607 N.E.2d 1356 (1993); *Malmberg v. Smith*, 241 Ill. App. 3d 428, 607 N.E.2d 1370 (1993); *Guertin v. Guertin*, 204 Ill. App. 3d 527, 561 N.E.2d 1339 (1990). Only the name of the individual or entity bearing such connection may be ascertained. See *Shutes v. Fowler*, 223 Ill. App. 3d 342, 584 N.E.2d 920 (1991) (petitioner entitled to names of companies involved at construction site where he was injured). However, where the known connection to the injury is remote and does little or nothing to limit or define the universe of potential defendants, the petitioner should not be precluded from ascertaining additional con-

necting facts to further refine the universe of defendants having potential liability so long as the attempted discovery does not seek to delve into any actual details of wrongdoing. The extent of this permissible inquiry must be determined by the trial judge on a case-by-case basis and in consideration of the cause of action alleged. When in the trial court's discretion the petitioner seeks to establish actual liability or responsibility rather than potentiality for liability, discovery should be denied.

■ Applying the above to the instant case, the question becomes whether the trial court abused its discretion when it granted petitioner's discovery request. Here the petitioner sought discovery of EdgeMark's response to the NASD's request for information concerning 36 individuals or married couples who made stock purchases immediately preceding the public announcement of EdgeMark's acquisition by Old Kent. The document prepared by EdgeMark presumably included additional connecting facts to establish which of those individuals or couples were otherwise affiliated with EdgeMark, its officer, directors or representatives "which could make them privy to non-public information." This presumption is born out by the trial court's and our own *in camera*[4] inspections of that document. The document does not disclose specific facts of insider trading nor does it disclose any actual acts of wrongdoing.

Petitioner's knowledge of the names of individuals or couples who acquired stock in EdgeMark immediately before the public announcement, without more, does little if anything to define or narrow the universe of potential defendants from the general members of the stock-purchasing public. Without information concerning the existence of relationships or affiliations between the named individuals and EdgeMark's officers or directors or representatives, any claim of insider trading would have been entirely speculative and baseless. The mere fact that stock was purchased immediately before the public announcement could result in a list of hundreds of people when dealing with a stock which is widely traded. Thus, a reasonable interpretation of Rule 224 would permit the trial judge some latitude of discretion under its provisions to allow discovery of certain additional facts pertaining to the relationship between the stock purchasers and the corporate insiders to further define and narrow the universe of potential defendants. The rule would not allow, however, further discovery of specific facts of wrongdoing. Such discovery could only be obtained after the filing of the substantive lawsuit where these potential defendants are joined as actual defendants or named as

[4]See footnote 1 *supra*.

respondents in discovery pursuant to section 2—402 of the Code of Civil Procedure (735 ILCS 5/2—402 (West 1994)). See *Shutes v. Fowler*, 223 Ill. App. 3d at 346, 584 N.E.2d at 923 (Rule 224 is intended as a supplement to section 2—402 of the Code).

In the instant case, since the information in EdgeMark's response pertained only to the potential for liability and did not pertain to actual liability, the allowance of that discovery by the trial court did not exceed the scope of Rule 224. Therefore, it was not an abuse of discretion to order production of the entire document.

In reaching this conclusion, we are mindful of concerns regarding use of Rule 224 to conduct fishing expeditions. See *Roth v. St. Elizabeth's Hospital*, 241 Ill. App. 3d at 421, 607 N.E.2d at 1365 (Lewis, J., specially concurring) ("[i]f this court *** opens the lid to [Pandora's] box *** then every potential plaintiff with competent counsel will use Rule 224 and push the questioning to the limits"). However, we correspondingly recognize the need to allow the trial court to exercise its discretion within the scope and latitude of the rule, to establish boundaries, given the nature of the case before it, and to grant limited discovery to acquire information which would suggest the potentiality of liability so as to make the subsequent filing of a lawsuit a fruitful pursuit. In this regard, we quote from *Shutes v. Fowler* as follows:

> "The trial court must issue an order for discovery before discovery can occur. This involvement of the circuit court protects against abuses of the discovery process. We have faith in the abilities of the trial judges of this State to recognize and refuse to permit 'fishing expeditions' and other abuses ***." 223 Ill. App. 3d at 346, 584 N.E.2d at 923.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

COUSINS and HOURIHANE, JJ., concur.