2026 IL App (1st) 251340

No. 1-25-1340

Opinion filed May 1, 2026

FIFTH DIVISION

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| MICHAEL and AMANDA MUFARREH, Individually and for MICHAEL, Their Son, | ) ) ) | Appeal from the Circuit Court of Cook County, |
| Petitioners-Appellees, | ) ) | Law Division. |
| | ) | |
| v. | ) | No. 2023 L 011363 |
| | ) | |
| GOOGLE, INC. and YOUTUBE, LLC, | ) ) | Honorable Sarah Johnson, |
| Respondents | ) | Judge, presiding. |
| | ) | |
| (John Doe, Interested Party-Appellant). | ) | |

PRESIDING JUSTICE MITCHELL delivered the judgment of the court, with opinion.
Justice Oden Johnson and Justice Wilson concurred in the judgment and opinion.

**OPINION**

¶ 1    Interested Party John Doe appeals the circuit court's order allowing petitioners Michael and Amanda Mufarreh, individually and for Michael, their son, to obtain Doe's identity from respondents, Google, Inc. and YouTube, LLC, as pre-suit discovery pursuant to Illinois Supreme Court Rule 224 (eff. Jan. 1, 2018). At issue is whether the circuit court erred in allowing pre-suit discovery because (1) petitioners fail to state a claim for intentional infliction of emotional distress and (2) petitioners already know John Doe's identity, making discovery unnecessary. For the following reasons, we reverse.

¶ 2                          I. BACKGROUND

¶ 3    Petitioners Michael and Amanda Mufarreh, individually and for Michael, their son, filed a petition seeking pre-suit discovery from respondents Google and YouTube pursuant to Illinois Supreme Court Rule 224 (eff. Jan. 1, 2018). According to the amended petition and an attached video exhibit, in 2023, 10-year-old petitioner Michael Mufarreh played in a competitive youth hockey game. Mufarreh missed the final penalty shot, losing the game, and had a severe emotional response on the ice. Among other things, he screamed, threw his hockey stick, gloves, and helmet, and fell to the ground.

¶ 4    On November 2, 2023, YouTube user FunnyIllinoisHockey uploaded a compilation video of Mufarreh's emotional episode. The video, entitled "TI Tantrum," was set to the song "Tantrum" by Madeline The Person. The video was two minutes and forty-four seconds in length and tracked Mufarreh's movements around the ice, zooming in on him as he broke down.

¶ 5    According to the petition, between November 2023 and April 2024, every time petitioners sought to have the video taken down, it would reappear. The video spread widely throughout the small youth hockey community. Mufarreh alleged that he suffered from restless sleep and anxiety attacks and was humiliated, mocked, and socially ostracized. His parents also alleged that they endured sleepless nights, psychological distress, and a strain on their marriage. Petitioners alleged that the video was repeatedly republished "purely to humiliate, isolate, and psychologically destroy" them. Petitioners also alleged that, based on information and belief, the anonymous account belonged to a 23-year-old coach from a rival hockey team who was using the video to recruit kids for his team and keep them away from Mufarreh's team.

¶ 6    Petitioners sought to compel respondents Google and YouTube to disclose the identity of the user who posted the video so they could sue the user for defamation, infringement on the right of publicity, and intentional infliction of emotional distress. Respondents informed the user of the litigation, and he appeared as John Doe, an interested party. After several amended petitions, on Doe's motion, the circuit court dismissed petitioners' claims for defamation and infringement on the right of publicity with prejudice. The circuit court also dismissed the parent's intentional infliction of emotional distress claims but allowed petitioners to proceed on the son's claim. Accordingly, the circuit court ordered respondents to turn over Doe's identity. Doe timely filed this appeal from the circuit court's order denying his motion to dismiss and granting the pre-suit discovery request; the discovery order was stayed pending this appeal. Ill. S. Ct. R. 303 (eff. July 1, 2017); *Beale v. EdgeMark Financial Corp.*, 279 Ill. App. 3d 242, 246 ("[T]he trial court's order granting petitioner's Rule 224 discovery request was a final and appealable order.").

¶ 7                                    II. ANALYSIS

¶ 8    Doe argues that the circuit court erred in allowing pre-suit discovery because the petition does not sufficiently state a cause of action for intentional infliction of emotional distress. Specifically, Doe argues that (1) the conduct alleged in the complaint is not extreme and outrageous, (2) petitioners cannot rely on their theory of Doe's identity to establish intent, (3) the allegations contradict the claim that Mufarreh suffered severe emotional distress, and (4) the petition fails to sufficiently allege that Doe's conduct was the actual and proximate cause of Mufarreh's purported emotional distress. Petitioners argue that the facts alleged sufficiently support a claim of intentional infliction of emotional distress under the limited Rule 224 inquiry. Rule 224 requires the petitioner to show that the proposed discovery is necessary. Ill. S. Ct. R.

224(a)(1)(ii). To demonstrate necessity, the petition must present sufficient allegations to state a claim and withstand a motion to dismiss under section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2024)). See *Hadley v. Doe*, 2015 IL 118000, ¶ 27. We review the legal sufficiency of the petition under section 2-615 *de novo*. *Id.* ¶ 29.

¶ 9       "In ruling on a section 2-615 motion to dismiss, the court must accept as true all well-pleaded facts in the complaint ***." *Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 267 (2003). The court must also consider attached exhibits. *Hadley*, 2015 IL 118000, ¶ 29. Claims of intentional infliction of emotional distress are held to a heightened pleading standard so "must be more specific and detailed than normally permissible in pleading a tort action." *Benton v. Little League Baseball, Inc.*, 2020 IL App (1st) 190549, ¶ 64. "[T]o state a cause of action for intentional infliction of emotional distress, a plaintiff must adequately allege that: (1) the defendant's conduct was extreme and outrageous; (2) the defendant either intended to inflict severe emotional distress or knew that there was a high probability that its conduct would do so; and (3) the defendant's conduct actually caused severe emotional distress." *Chang Hyun Moon v. Kang Jun Liu*, 2015 IL App (1st) 143606, ¶ 23 (citing *McGrath v. Fahey*, 126 Ill. 2d 78, 86 (1988)).

¶ 10      Whether conduct is extreme and outrageous is determined using an objective standard considering the facts and circumstances. *Duffy v. Orlan Brook Condominium Owners' Ass'n*, 2012 IL App (1st) 113577, ¶ 36. "Extreme and outrageous behavior will not be found with mere insults, indignities, threats, annoyances, petty oppressions, or trivialities." *Id.* "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." (Internal quotation marks omitted.) *Public Finance Corp. v. Davis*, 66 Ill. 2d 85, 90 (1976). The conduct must "be regarded as intolerable in a civilized

community." *Kolegas v. Heftel Broadcasting Corp.*, 154 Ill. 2d 1, 21 (1992). Conduct is extreme and outrageous if "recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!' " (Internal quotation marks omitted.) *Doe v. Calumet City*, 161 Ill. 2d 374, 392 (1994) (quoting Restatement (Second) of Torts § 46 (1965)). "The defendant's conduct must be extreme or outrageous and must exceed all possible bounds of decency." Bruce L. Ottley, Rogelio A. Lasso, and Michelle J. Poelle, Illinois Tort Law § 3.02 at 3-6 (4th ed. 2024).

¶ 11    According to the petition, Doe posted a video to YouTube that depicted Mufarreh having a strong emotional reaction to missing a penalty shot. The video shows Mufarreh having a breakdown on the ice with incidents of screaming, throwing his gear, and falling to the ground. However, the petition also alleged that Mufarreh is a star youth hockey player who regularly competes in high-profile tournaments that "are streamed live with commentary." This suggests Mufarreh was accustomed to playing in games that were public, high stakes, scrutinized, and recorded for online viewers.

¶ 12    Additionally, "Illinois cases in which intentional infliction of emotional distress has been sufficiently alleged have in fact very frequently involved a defendant who stood in a position of power or authority relative to the plaintiff." *McGrath v. Fahey*, 126 Ill. 2d 78, 87 (1988). This situation does not involve any abuse of power over Mufarreh. Petitioners did not allege that Doe abused any position of authority. Rather, Doe posted a video depicting public events. Further, petitioners do not contend that the video was altered or inaccurate.

¶ 13    In other complaints involving media, the extreme and outrageous conduct was far more egregious than the conduct at issue here. See, *e.g.*, *Green v. Chicago Tribune Co.*, 286 Ill. App. 3d

1, 13 (1996) ("We hold plaintiff stated a cause of action for intentional infliction of emotional distress caused by the Tribune when it barred her from seeing her dead son on December 31 while it photographed him, and when it published the January 1 article featuring her statements to her son and the photograph of him lying dead."); *Kolegas*, 154 Ill. 2d at 22-23 (concluding radio announcers' conduct was sufficiently extreme and outrageous where they broadcast derogatory remarks about plaintiff's wife and child with neurofibromatosis throughout the larger Chicago area and implied they had deformed heads and were hideous). Additionally, the Illinois Supreme Court in *Kolegas* highlighted that the radio announcers who behaved outrageously "had access to channels of communication," whereas "the plaintiffs had no similar access to the public," so were deprived "of the opportunity to deny or rebut [the] false statements." *Kolegas*, 154 Ill. 2d at 22. Due to this communication imbalance, the radio announcers had power over the plaintiffs. *Id.* at 22-23. The same is not true for petitioners here, who also had access to Doe's channels of communication, the internet, if they wished. There was no power imbalance.

¶ 14     Moreover, while the plaintiffs in *Green* and *Kolegas* were identified by name in the respective publications, Mufarreh is not recognizable from the video. See *Green*, 286 Ill. App. 3d at 8; *Kolegas*, 154 Ill. 2d at 7. The recording is filmed from a distance and is of poor quality, making Mufarreh's face blurry, pixelated, and not clearly depicted. Neither is his name or other identifying information on his jersey visible to the camera. Nothing distinguishes him from the other players on his team. Ultimately, unless a viewer already knew it was Mufarreh, they would not be able to identify him from the video. Thus, considering the totality of the facts and circumstances, posting the video to YouTube does not go "beyond all possible bounds of decency,

such that a reasonable person would hear the facts and be compelled to feelings of resentment and outrage." *Duffy*, 2012 IL App (1st) 113577, ¶ 36.

¶ 15 Petitioners argue that Doe engaged in a series of repetitive actions beyond an isolated incident, making his behavior more outrageous. See *Pavlik v. Kornhaber*, 326 Ill. App. 3d 731, 746 (2001) ("It may be the pattern, course and accumulation of acts that make the conduct sufficiently extreme to be actionable, whereas one instance of such behavior might not be."). Petitioners alleged that "from November 2023 to April 2024," Doe "constantly spread[ ] the video throughout the youth hockey community" through a "malicious and relentless social media campaign." However, petitioners only alleged that Doe posted the video to YouTube. They did not allege any other facts as to how Doe spread the video throughout the small community or what his "relentless social media campaign" entailed. Petitioners also claimed that "the damage here arose by John Doe's persistent publication of the video," and that "every time it was taken down, the video would re-appear." But petitioners provided no other factual allegations about Doe's persistent publication, such as how many times, if at all, he reuploaded the video to YouTube. It is not clear from petitioners' allegations whether the video continued to "re-appear" because YouTube unflagged the video or because Doe reuploaded the video. But regardless, the conduct alleged is not actionable because it cannot be characterized as "atrocious, and utterly intolerable in a civilized community." (Internal quotation marks omitted.) *Pavilon v. Kaferly*, 204 Ill. App. 3d 235, 245 (1990) (quoting Restatement (Second) of Torts § 46 (1965)).

¶ 16 Petitioners also argue that because Mufarreh was a 10-year-old child, he was particularly susceptible to emotional distress. See *McGrath*, 126 Ill. 2d at 90 ("Behavior which (though rude, abrasive or extremely inconsiderate) may not otherwise be actionable may be deemed outrageous

if the defendant knows that the plaintiff is peculiarly susceptible to emotional distress."). But "peculiar susceptibility unaccompanied by major outrage cannot of itself raise the defendants' conduct to the level of extreme and outrageous." *Rudis v. National College of Education*, 191 Ill. App. 3d 1009, 1015 (1989). "Conduct may be discriminatory, blameworthy, highly inappropriate, and reprehensible, but that does not make it actionable as intentional infliction of emotional distress." *Benton*, 2020 IL App (1st) 190549, ¶ 69.

¶ 17    Petitioners were also required to show that Doe "either intended that his [ ] conduct should inflict severe emotional distress or knew there was a high probability" that his conduct would do so. *Rekosh v. Parks*, 316 Ill. App. 3d 58, 66 (2000), *abrogated on other grounds by Cochran v. Securitas Security Services USA, Inc.*, 2017 IL 121200. However, petitioners alleged that Doe "is using the video as a weapon to recruit kids to his program and keep kids away from Team Illinois." Thus, petitioners alleged Doe's intent was to benefit his team, not to cause Mufarreh severe emotional distress. Elsewhere, petitioners alleged the video was posted "purely to humiliate, isolate, and psychologically destroy the Mufarrehs," but these allegations are conclusory and insufficient on their own. See *Welsh v. Commonwealth Edison Co.*, 306 Ill. App. 3d 148, 155 (1999) ("A pleading which merely paraphrases the elements of a cause of action in conclusory terms is not sufficient.").

¶ 18    Likewise, petitioners needed to allege that "the defendant's conduct actually caused severe emotional distress." *Chang Hyun Moon*, 2015 IL App (1st) 143606, ¶ 23. "To constitute severe distress, the distress inflicted must be so severe that no reasonable man could be expected to endure it; fright, horror, grief, shame, humiliation, worry, etc. *alone* are not actionable." (Emphasis in original and internal quotation marks omitted.) *McGrath v. Fahey*, 163 Ill. App. 3d 584, 589

(1987). Petitioners alleged that Mufarreh "endured persistent psychological torment" and was "terrorized." They alleged that Mufarreh suffered "severe sleep deprivation" due to "repeated nights of restless sleep, haunted by the humiliation and social ostracization caused by the video's relentless circulation." Mufarreh was "emotionally paralyzed," enduring "anxiety attacks" and withdrawing from friends and hockey. Although petitioners alleged Mufarreh suffered from humiliation and anxiety, "[m]erely characterizing emotional distress as severe is not sufficient." *Welsh*, 306 Ill. App. 3d at 156. "[T]he plaintiffs generally allege that they suffered anxiety, humiliation, and extreme and severe emotional distress, but the complaint contains no factual allegations from which the level of severity of the emotional distress could be inferred." (Internal quotation marks omitted.) *Id.* at 155. Without more specificity, petitioners' allegations that Mufarreh endured restless sleep and anxiety attacks are insufficient to meet the heightened pleading standard for intentional infliction of emotional distress.

¶ 19    Lastly, petitioners argue that if they were required to conclusively establish every element before discovery, Rule 224 would be nullified where, as here, anonymous speech is involved. However, this concern is precisely why "a Rule 224 petitioner [must only] provide allegations sufficient to overcome a section 2-615 motion to dismiss." *Stone v. Paddock Publications, Inc.*, 2011 IL App (1st) 093386, ¶ 18. The appellate court concluded that this requirement would adequately balance "a plaintiff's right to seek redress" with "the right to speak anonymously." *Id.* ¶¶ 16-18, 35. Petitioners fail to state a claim for intentional infliction of emotional distress, so have not satisfied this standard. Thus, the circuit court erred in granting their petition for pre-suit discovery. Because we reverse on these grounds, we need not address Doe's other arguments on appeal.

¶ 20                                III. CONCLUSION

¶ 21    The judgment of the circuit court of Cook County is reversed.

¶ 22    Reversed.

***Mufarreh v. Google, Inc.*, 2026 IL App (1st) 251340**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 2023 L 011363; the Hon. Sarah Johnson, Judge, presiding. |
| **Attorneys for Appellant:** | Allen R. Perl, Bridgette M. Moran, and Christopher M. Goodsnyder, of Perl & Goodsnyder, Ltd., for appellant. |
| **Attorneys for Appellees:** | Matthew M. Wawrzyn, of FisherBroyles, LLP, for appellees. |